James C. GALLOWAY, on behalf of himself and all other persons, firms, corporations or associations similarly situated, Plaintiff,

v.

AMERICAN BRANDS, INC., the Austin Company, Inc., Austin-Carolina Co., Inc., Brown & Williamson Tobacco Corporation, J. E. Bohannon Co., Inc., Carolina Leaf Tobacco Company, Inc., Carolina Leaf International Corporation, Dibrell Brothers, Incorporated, Dibrell Brothers International, Incorporated, Dibrell-Carolina Far Eastern Corporation, Export Leaf Tobacco Company, Gallaher, Ltd., Greenville Tobacco Company, Incorporated, Greenville Tobacco Company International, Inc., Imperial Tobacco Group Limited, Liggett & Myers, Incorporated, Loew's Theaters, Inc. (d/b/a P. Lorillard), James I. Miller Tobacco Export Co., A. C. Monk & Company, Inc., Monk International Incorporated, Monk-Henderson Tobacco Company, Phillip Morris Incorporated, Mullins Leaf Tobacco Company, Inc., R. J. Reynolds Tobacco Company (R. J. Reynolds, Inc.), W. I. Skinner & Company, Southeastern Tobacco Co., Southwestern Tobacco Company, Incorporated, J. P. Taylor Company, Incorporated, Universal Leaf Tobacco Company, Incorporated, C. W. Walters Company, Incorporated, Whitehead & Anderson Incorporated, Winston Leaf Tobacco Company, Winston Leaf Tobacco Export Company, Earl L. Butz, Secretary of Agriculture of the United States, ABC Corporation, John Doe, Richard Roe, Defendants.

No. 75–0112–Civ–5.

United States District Court, E. D. North Carolina, Raleigh Division.

Nov. 8, 1978.

Frank M. Wooten, Jr., Greenville, N. C., for plaintiff Galloway; J. Nat Hamrick, Rutherfordton, N. C., Cochrane & Bresnahan, St. Paul, Minn., Robert C. Howison, Jr., Odes L. Stroupe, Jr., Joyner & Howison, Raleigh, N. C., E. N. Zeigler, Florence, S. C., of counsel.

Charles T. Hagan, Jr., David W. Fouts, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, N. C., Paul G. Pennoyer, Jr., Chester J. Hinshaw, Chadbourne, Parke, Whiteside & Wolff, New York City, for American Brands, Inc.

N. R. Coleman, Jr., Milligan, Coleman, Fletcher & Gaby, Greenville, Tenn., A. H. Jeffress, Jeffress, Hodges, Morris & Rochelle, Kinston, N. C., for Austin Co.

Norwood Robinson, Hudson, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., Ernest Pepples, Gen. Counsel & Secretary, Brown & Williamson Tobacco Corp., Louisville, Ky., for Brown and Williamson Tobacco Corp., and Export Leaf Tobacco Co.

Charles E. English, English, Lucas, Priest & Owsley, Bowling Green, Ky., John R. Hooten, White, Allen, Hooten & Hines, Kinston, N. C., for J. E. Bohannon Co., Inc.

William W. Speight, W. H. Watson, Speight, Watson & Brewer, Greenville, N. C., Jack L. Nettles, McGowan, Nettles, Keller, Eaton & Porter, Florence, S. C., Howard Adler, Jr., Larry D. Sharp, Bergson, Borkland, Margolis & Adler, Washington, D. C., for Carolina Leaf Tobacco Co., Inc., Carolina Leaf Intern. Corp., Dibrell Brothers, Inc., Dibrell Brothers Intern., Inc., Dibrell-Carolina Far Eastern Corp., and C. W. Walters Co., Inc.

Tommy W. Jarrett, Dees, Dees, Smith, Powell & Jarrett, Goldsboro, N. C., William R. Glendon, Guy C. Quinlan, Rogers & Wells, New York City, for Gallaher Ltd.

Malcolm J. Howard, Howard & Vincent, Greenville, N. C., for Greenville Tobacco Co., Inc., and Greenville Tobacco Co. Intern., Inc.

Z. Hardy Rose, Lucas, Rand, Rose, Meyer, Jones & Orcutt, Wilson, N. C., Fred D. Turnage, Cleary, Gottlief, Steen & Hamilton, Washington, D. C., for Imperial Tobacco Group Limited.

James Newsom, A. H. Graham, Jr., Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson, Joseph H. Greer, Cigarette Div., Liggett & Myers, Inc., Durham, N. C., for Liggett & Myers, Inc.

Thornton H. Brooks, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N. C., Joseph W. Gelb, Weil, Gotshal & Manges, New York City, for Loew's Theaters, Inc. (d/b/a P. Lorillard).

A. A. Zollicoffer, Jr., Zollicoffer & Zollicoffer, Henderson, N. C., for James I. Miller Tobacco Export Co.

Louis W. Gaylord, Jr., Gaylord & Singleton, Greenville, N. C., for A. C. Monk & Co., Inc., Monk Intern. Inc., and Monk-Henderson Tobacco Co.

McNeill Smith, Richard Ellis, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., Murray Bring, Phillip Nowak, Arnold & Porter, Washington, D. C., for Phillip Morris Inc.

A. H. Jeffress, Jeffress, Hodges, Morris & Rochelle, Kinston, N. C., for Mullins Leaf Tobacco Co., Inc.

Howard E. Manning, Manning, Fulton & Skinner, Raleigh, N. C., Bartlett H. McGuire, Davis Polk & Wardwell, New York City, for R. J. Reynolds Tobacco Co. (R. J. Reynolds, Inc.)

William R. Peel, Peel & Peel, Williamston, N. C., for W. I. Skinner & Co.

Jasper L. Cummings, Jr., Robert M. Wiley, Jr., Battle, Winslow, Scott & Wiley, Rocky Mount, N. C., for Southeastern Tobacco Co. and Whitehead & Anderson Inc.

Charles H. Young, Joseph C. Moore, Jr., Young, Moore & Henderson, Raleigh, N. C., George R. Humrickhouse, John O. Peters, Sam Hixon, Williams, Mullen & Christian, Richmond, Va., for Universal Leaf Tobacco Co., Inc., J. P. Taylor Co., Inc., Southwestern Tobacco Co., Inc., Winston Leaf Tobac-

co Co. and Winston Leaf Tobacco Export Co.

Edward M. Silverstein, Garrett B. Stevens, Attys., U. S. Dept. of Agriculture, Marketing Div., Washington, D. C., George M. Anderson, U. S. Atty., Raleigh, N. C., for Dept. of Agriculture.

## MEMORANDUM OF DECISION AND ORDER

DUPREE, District Judge.

Plaintiff James C. Galloway seeks to represent between 80,000 to 200,000 tobacco farmers from across four states who have allegedly been damaged by thirty corporate defendants committing antitrust violations over a five-year period in the sale of tobacco. The defendants' motion for an order denying class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure presents the issues of whether questions of law or fact common to the tobacco farmers "predominate" over individual issues and whether the class action is "superior" to other procedural mechanisms. The following material facts appear from the complaint as amended, the deposition of James C. Galloway, the affidavits of Leonard J. Ford and J. Frank Bryant, and attached exhibits.

This is a private antitrust action alleging that the defendants violated Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) while purchasing flue-cured tobacco from the plaintiff. These violations allegedly took place with the "knowledge, consent and acquiescence" of the Secretary of Agriculture. The plaintiff seeks to have the case prosecuted as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The alleged class is composed of all flue-cured tobacco "cooperators", within the meaning of 7 U.S.C. § 1428(b), residing in Florida, Georgia, North Carolina and Virginia. The number of these cooperators is between 80,000 and 200,000. The class membership is made up of owners of flue-cured tobacco allotments, lessors, lessees, tenants, landlords and sharecroppers, among others.

Flue-cured tobacco is a perishable crop, the quality of which is affected by many variables, such as soil and weather conditions, the skill of the grower, and the methods of growing and curing. The tobacco is classified by government graders into 161 different quality grades. The quality of the tobacco sold varies from day to day and from market to market.

The tobacco grown by the putative class is sold at auctions within 394 independent warehouses located in 93 geographic markets throughout the states of Florida, Georgia, North Carolina and Virginia. The tobacco is sold in individual lots weighing 200 pounds or less. For the years covered by this lawsuit, annual flue-cured tobacco sales have exceeded one billion pounds. Thus, in a typical year the aggregate number of individual sales transactions exceeds five million. *See, e. g.,* U.S.D.A. Flue-Cured Tobacco Market Review, pp. 9 and 17, March, 1975 (Exhibit 1 attached to R. J. Reynolds Tobacco Company memorandum in support of company defendants' motion).

The defendants are not the only purchasers of tobacco at these auctions. In addition to the defendants, a tobacco farmer may sell his tobacco to some other private buyer, or to a warehouseman, or to the Flue-Cured Tobacco Cooperative Stabilization Corporation under the government's price support program. The defendants' buying practices vary from day to day and from market to market. Some of the defendants do not purchase tobacco from all the markets or during all of the days. Nor do they purchase all of the grades of tobacco. The prices for tobacco of similar grades vary from day to day, warehouse to warehouse and market to market. *Id.*

■ The plaintiff may maintain a class action under Rule 23(b)(3) if the court finds that the questions of law or fact common to the tobacco farmers predominate over any questions affecting only individual farmers, and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy.[1] However, the concepts of "common question predominance" and "class action superiority" are abstractions difficult to apply to factually complex cases. Accordingly, Rule 23(b)(3) lists four factors for a court to weigh in the determination of "predominance" and "superiority".[2] The court needs to concern itself only with the latter two factors listed by Rule 23(b)(3).[3] First, the court should consider the desirability of concentrating all the claims of the 80,000 to 200,000 tobacco farmers into one lawsuit. Secondly, the court must consider the difficulties likely to be encountered in the management of the class action. These two factors must be individually weighed against the other. No one factor is determinative on the question of class certification. 7A Wright & Miller, Federal Practice & Procedure § 1780, at 64–65 (1972).

## I. *The Desirability of Concentrating All Litigation In One Forum.*

■ A. This factor compels a court to evaluate whether allowing a Rule 23(b)(3) action to proceed will prevent duplication of effort and the possibility of inconsistent results. *Id.* at 72. Similarly, the court must take into account the importance of protecting the defendants from being subjected to the "expensive ordeal of continually having to demonstrate their innocence at trial." *Research Corp. v. Pfister Asso-*

*ciated Growers, Inc.*, 301 F.Supp. 497, 503 (N.D.Ill.1969), *appeal dismissed sub nom., Research Corp. v. Asgrow Seed Co.*, 424 F.2d 1059 (7th Cir. 1970). The recent case of *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978) compels the court to conclude that the proposed class action will not prevent duplication of effort and that possible inconsistent results would be certain to occur if each one of the 80,000 to 200,000 tobacco farmers brought individual antitrust actions.

*Windham* emphasizes that every private antitrust action contains three essential elements: (1) a violation of the antitrust law; (2) direct injury to the plaintiffs from such violations; and (3) *damages sustained by the plaintiff. Id.* at 65 and n. 11 (emphasis added). A mere finding of violation does not result in liability. The statute gives a right of action only to the extent that one has been injured in his business or property by reason of anything forbidden by the antitrust laws. *Id.*; 15 U.S.C. § 15. The crux of the action is injury, *individual* injury. While a case may present a common question of violation, the issues of injury and damage remain the critical issues in such a case and are always strictly individualized. Therefore, in calculating any one of the thousands of the tobacco farmers' claims the court would be required not only

1. The court assumes plaintiff satisfies the prerequisites of Rule 23(a): (1) the class is so *numerous that joinder of all members is impracticable;* (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

2. (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. F.R.Civ.P. 23(b)(3).

3. The court is not presented with facts that shed light on whether there are sufficient antagonisms within the proposed class that would make the representative plaintiff, James C. Galloway, more interested in controlling the prosecution of the action for his own benefit instead of the benefit of the class. F.R.Civ.P. 23(b)(3)(A). Accordingly, the court will not consider this factor within the weighing process. Moreover, no extensive discussion is needed on the extent and nature of any litigation concerning this controversy already commenced by the class. F.R.Civ.P. 23(b)(3)(B). To the court's knowledge, there is no overlapping litigation of this matter within the states of Florida, Georgia, North Carolina and Virginia. The court is aware, however, that similar litigation is currently underway representing the interests of South Carolina and Kentucky tobacco farmers, who are not members of the proposed class in the instant case.

to consider the farmers' sales on an individual basis, but also relate those sales to one of the conspiracy violations alleged by the representative plaintiff. Should the class be certified, the court would be swamped by an overwhelming deluge of mini-trials in which each member of the class would be entitled to a jury trial. The time and attention of the court would be engaged for years to come. *Id.* at 67. The court therefore sees no substantive difference in how the case might be handled if it were prosecuted as a class action instead of through thousands of individual actions. Duplication of effort in the class action would be staggering; the risk of inconsistent results would be high.

■ B. A second factor to consider in determining whether multiple litigation should be concentrated into one forum is whether or not the representative plaintiff can prosecute the action alone should class certification be denied. Justification of class certification is absent if the individual plaintiff is financially able to prosecute the individual action. *Windham,* 565 F.2d at 69, *citing Yanai v. Frito Lay, Inc.,* 61 F.R.D. 349, 353 (N.D.Ohio 1973); *see also Seligson v. Plum Tree, Inc.,* 61 F.R.D. 343, 346 (E.D. Pa.1973). The representative plaintiff in this case has indicated that he will continue the action should class status be denied and that he will alone finance the costs of the litigation.

■ C. Finally, the court must consider whether a class action would render settlement of the case unlikely. 7A Wright & Miller, Federal Practice & Procedure § 1781 at 85 (1972). This factor must be carefully weighed since a settlement would avoid burdening the courts with a long and complicated controversy.

In every antitrust action there is less chance of pre-trial settlement in the event class status is certified because the defendants must bargain with the entire class and secure the court's approval of any settlement. Moreover, settlement is unlikely in this case because the litigation strikes at the heart of the tobacco auction system, which has been in existence for generations.

Any settlement would expose the defendants to future litigation as long as tobacco is auctioned in a similar fashion.

In conclusion, the court finds that the concentration of thousands of tobacco farmers' claims into one forum is undesirable.

II. *Management Difficulties.*

■ Another factor relevant to the determination of "predominance" and "superiority" is the difficulty likely to be encountered in managing a class action. F.R. Civ.P. 23(b)(3)(D). The management difficulties posed by the proposed class action are striking. To show the extent of the defendants' liability, each member of the tobacco farmer class must produce warehouse receipts and sales slips for each 200-pound pile of tobacco sold during a five-year period. (In 1973 alone, 1,010,699,740 pounds of tobacco were sold in Alabama, Florida, Georgia, North Carolina and Virginia. Based on a rate of 200 pounds per pile of tobacco, this amount of tobacco could involve about 5,053,499 separate and distinct transactions in 1973 alone.) During the five-year period covered by the complaint, over 25 million separate transactions took place. Each transaction must be analyzed to determine the seller, the purchaser, the grade and quality of tobacco sold, and the price paid. Moreover, testimony must be elicited to fill the gaps in the documentary evidence. Conceivably, a finding would have to be made on each pile of tobacco sold in five states over a five-year period. Further, the fact-finding process would be further complicated by the high number of defendants, markets and warehouses involved, and the wide variances in crop, weather and soil conditions and cultivation and curing practices over the five-state area. *See generally, Windham, supra.* Assuming that at trial each tobacco farmer would require one hour to present evidence and that the court could devote forty hours of actual trial time per week for fifty weeks per year exclusively to the case, the trial of the individual damage claims alone (necessitated by the fact that individual damage is an element of a private antitrust

claim) will consume well over one hundred years. The situation vastly differs from an antitrust case wherein the product involved is uniform in quality and price. When the produce is homogeneous in nature and has an unchanging price during the life of the alleged conspiracy, aggregate damages to the class may be easily determined from sales records for the relevant time period. *Windham*, 565 F.2d at 68 n. 25. In contrast, tobacco is a product that varies widely in price and quality,[4] necessitating examination of each sale to determine the defendants' total liability.

The court has examined various procedural alternatives as well as curative provisions within Rule 23(c) that would tend to render a class action more manageable, but finds none of them to be of any avail. Trial bifurcation and fluid recovery have been rejected by the Fourth Circuit in the context of antitrust actions attacking the tobacco auctioning system. *Windham, supra.* Nor is the appointment of a special master pursuant to F.R.Civ.P. 53 a feasible alternative. The court has no reason to believe that a special master could process the claims, determine class membership and assess damages within the lifetime of the members of the proposed class. Moreover, a special master approach is often expensive and may substantially deplete any damage recovery. Miller, *Problems in Administering Judicial Relief Under Federal Rule 23(b)(3)*, 54 F.R.D. 501, 506 (1972).

The court also rejects the "test case" method.[5] The test case method poses an unduly high risk that the unnamed class plaintiffs will be prejudiced by a judgment adverse to the test plaintiff. Should the defendants prevail in the test action, the unnamed parties may in fact be bound by the judgment through application of *stare decisis*, if not collateral estoppel. *Katz v. Carte Blanche Corporation*, 496 F.2d 747,

760 (3rd Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). Moreover, the court has no indication that the test plaintiff could absorb the expense or endure the mechanics of obtaining express consent from each of the proposed class members to proceed with a test case.

Rule 23(d) provides another method that might reduce the class to a more manageable size. Under the rule, a district court may direct that a notice be sent to all the proposed class members requiring them to file a statement of claim by a certain date. If a class member fails to meet the deadline he automatically loses his right to assert the claim. Supposedly, a significant number of the thousands of tobacco farmers would likely fail to meet the deadline if this method were used, thereby reducing the class to a more manageable size. Presumably, the method is not fundamentally unfair because the farmers would be given adequate notice. *See, Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 459–60 (E.D.Pa.1968); 3B Moore's Federal Practice ¶ 23.01 at 23–26 (2nd Ed. 1977); *citing, Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). However, the costs of notifying 80,000 to 200,000 tobacco farmers would be staggering. (For example, notification of only 20,000 tobacco farmers would cost at least $30,000. *Windham, supra.*) Moreover, the court questions each tobacco farmer's ability to present a statement of claim within a period of time required by the court. Each farmer presumably would have to hire a lawyer representing only his interest (thereby defeating the very purpose of class action representation) and the lawyer would have to undergo the painstaking process of examining every sale of each pile of tobacco sold by his client over a five-year period. Such a procedure would intolerably lengthen the duration of this litigation.

---

4. Galloway's own deposition vividly illustrates price variation on a single day within one warehouse.

5. In the test case method, an individual plaintiff litigates the substantive legal issues for the benefit of the entire class. If the plaintiff receives the express prior consent of the class, a favorable judgment has a binding effect on the class through a liberal application of the collateral estoppel doctrine; however, collateral estoppel does not bind the class to an adverse judgment.

The court is sensitive to the needs of tobacco farmers for an effective judicial mechanism for attacking any widespread antitrust conspiracy against them.[6] The doors of this court are open to them. However, a weighing of all the factors listed within Rule 23(b)(3) compels the court to conclude that class certification must be denied. Any other holding would grind the judicial machinery in this district to a halt, and in the process close the courthouse doors through which the proposed class seeks to enter. No rational reason compelling this court to convert into a coliseum of class action conflict exists.

### III. *Timing of Denial of Class Status.*

▉ The plaintiff contends that any decision on class status at this juncture of the proceedings is premature because several discovery matters bearing on the issue of class action certification are now pending before the court.[7] Plaintiff's contention is without merit. The mandate of Rule 23 is to make a class determination as soon as practicable. F.R.Civ.P. 23(c)(1). This court has wide discretion in its determination of class status as to such times and under such circumstances that will best fit the needs of the case. *Philadelphia Housing Auth. v. American Radiator and Standard Sanitary Corp.*, 323 F.Supp. 364, 373 (E.D.Pa.1970). The court sees no reason for further delay on the decision of class certification because of the similarity between this case and *Windham, supra,* which originates in South Carolina. A comparison of the marketing conditions in the four states involved here with those in South Carolina clearly establishes that, except for the increased numbers of producers and increased tobacco vol-

ume in the four-state area, the market conditions are exactly the same. Thus, the South Carolina District Court and the Fourth Circuit's legal conclusions establishing the basis for class certification denial are equally applicable here. Moreover, there is a nexus between *Windham* and this case that is readily apparent. The complaints in the two cases, the counsel representing the plaintiffs in the two cases, and the factual and legal issues involved in the two cases are identical. Further, the court has benefited from a deposition of James C. Galloway and various affidavits and exhibits submitted by the defendants that reveal various facts critical to a determination of class status. No abuse of discretion exists when a court renders a decision on class certification before further discovery is completed if a sufficient evidentiary basis is provided by a related court case and supplementary affidavits and depositions. *Kamm v. California City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975). The plaintiff's assertion that additional discovery is required, without a specific showing of necessity, is not sufficient to overcome the mandate of Rule 23(c)(1) that class determination be made as soon as practicable. *Guy v. Abdulla,* 57 F.R.D. 14, 15 (N.D.Ohio 1972).

▉ Plaintiff further contends that an adverse ruling as to class action certification will mean that the statute of limitations has effectively run on claims for many thousands of tobacco farmers who might otherwise be entitled to recovery. However, "it does not necessarily follow that the case must be treated as if there never was an action brought on behalf of absent class members." *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 461

---

**6.** Because tobacco farmers face uncontrollable natural forces, operate on borrowed money and leased lands, and are widely scattered over a geographic area, any organized effort toward solving a common grievance may be difficult. Moreover, any proof of a price-rigging conspiracy is difficult because the government imposes a floor on tobacco prices. *See* Comment, *Some Legal Aspects of Flue-Cured Tobacco Marketing*, 4 W. F. Intra. L. Rev. 328 & n. 1 & 336 (1968).

**7.** At least five discovery motions are now pending: (a) defendants' objections to plaintiff's data processing retrieval interrogatories; (b) plaintiff's motion for amending and/or modifying the document retention order; (c) plaintiff's motion to compel answers to plaintiff's first preliminary set of interrogatories; (d) defendants' motion to limit discovery to class action matters and to have the court set a discovery schedule; (e) defendant Secretary of Agriculture's motion to compel plaintiff to answer interrogatories.

(E.D.Pa.1968). If the reason for denying class certification stems from a weighing of judicial housekeeping considerations, as in the instant case, the decision should not prejudice the unnamed class members. Any other approach would make it virtually mandatory for every class member to file a cautionary separate action within the limitation period. Accordingly, the court finds that the bringing of a class action within the four-year limitations period provided by 15 U.S.C. § 15b tolls the statute of limitations as to absent class members who did not file their own independent actions before the statute ran against them. *See generally, Minnesota v. United States Steel Corp.*, 44 F.R.D. 559, 572–73 (D.Minn.1968); 7A Wright & Miller, Federal Practice & Procedure § 1795 at 221–22 (1972).

## ORDER

The defendants' motion for an order determining that no class action may be maintained is allowed. The plaintiff is directed pursuant to F.R.Civ.P. 23(d)(4) to amend his pleadings so that any allegations as to the representation of absent persons are eliminated. The amended pleadings shall specify with greater particularity the aspects of plaintiff's damages. Plaintiff is granted twenty days from the date of issuance of this order to file the amended pleadings.

SO ORDERED.