Dusan MLADEN, on his own behalf, and on behalf of all persons similarly situated, Plaintiff,

v.

Howard GUNTY, Charles Cipolla, Irving Federman, Mitchell Gunty, James L. Pierce, David S. Webb, Nicholas Taube, Rebecca Cerny, Samuel M. Koren, North East Insurance Company, Bradford Associates, Inc., and Bernard D. Gershuny, Defendants.

Civ. No. 86–0357 P.

United States District Court, D. Maine.

March 13, 1987.

Frank A. Weg, New York City, Michael X. Savasuk, Portland, Me., for plaintiff.

Kevin G. Libby, Portland, Me., Raymond G. McGuire, New York City, for defendants Cipolla, Federman, Mitchell Gunty, Pierce, Webb, Taube, Cerny & Koren.

Thomas H. Allen, Bruce W. Smith, Portland, Me., for defendant Northeast Ins. Co.

Peter DeTroy, Portland, Me., for defendants Howard Gunty & Bradford Associates.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This matter comes before the Court on the motion of all Defendants except Bernard Gershuny (Gershuny) to deny class certification, and on the motion of Defendant Gershuny to dismiss the Amended Complaint as to him pursuant to Federal Rules of Civil Procedure 12 and 9(b).[1] For the reasons set forth below, we deny the motion to deny class certification and grant Gershuny's motion to dismiss.

## I. BACKGROUND

Plaintiff originally brought a class and derivative action against the named Defendants by filing suit in the United States District Court for the Southern District of New York. Prior to the expiration of Defendants' time to respond as extended, Plaintiff served and filed an Amended Complaint. Subsequently, Defendants other than Gershuny moved to dismiss or, in the alternative, to transfer the action. An Order transferring the action to this Court was entered on October 14, 1986.

The Amended Complaint seeks damages and injunctive relief on six counts: violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5, 17 C.F.R. 240.10b–5 (1986) (Count One); breach of fiduciary obligations (Count Two); common-law fraud (Count Three); and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68 (1982 & Supp. III 1986) (Counts Four through Six). Specific allegations relevant to the disposition of the motions now before the Court will be discussed below in the context of each motion; a brief summary is set out here.

Briefly stated, Plaintiff brings this action seeking relief for alleged fraudulent activities of Defendants relating to the sale of stock in the North East Insurance Company (North East). Plaintiff asserts that Defendants are engaged in a fraudulent scheme that includes material misrepresentations made by Defendants other than Gershuny to Plaintiff and the class he seeks to represent (Amended Complaint, ¶¶ 25, 27, 30),[2] and bad faith by all Defend-

---

1. Specifically, Gershuny moves to dismiss for lack of personal jurisdiction (Fed.R.Civ.P. 12(b)(2)), failure to state a claim upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)), and failure to plead allegations of fraud with sufficient particularity (Fed.R.Civ.P. 9(b)).

2. *See infra,* Part III. Plaintiff alleges that material misrepresentations made in financial statements, annual reports, and regulatory agency filings resulted in a benefit to Defendants and an injury to Plaintiff and the class he seeks to

ants, including Gershuny, relating to a contract for the sale of a controlling interest in North East to Plaintiff. (*Id.*, ¶¶ 16, 34–37). With respect to the sale of North East shares, the Amended Complaint alleges that Defendants other than Gershuny, while still under contract with Plaintiff, agreed to sell a controlling interest to Gershuny. The Amended Complaint further alleges that, at that time, Gershuny was acting as a "front" for Defendants Howard Gunty (H. Gunty) and Mitchell Gunty (M. Gunty), and for one Nicolas Neu (Neu). (*Id.*). Plaintiff alleges that the front is necessary because Neu's inability to gain the approval of regulatory authorities would preclude his being presented as the disclosed purchaser. (*Id.*, ¶ 39).

## II. MOTION TO DISMISS

Defendant Gershuny moves under the Federal Rules of Civil Procedure to dismiss on three grounds: lack of personal jurisdiction (Rule 12(b)(2)), failure to state a claim upon which relief may be granted (Rule 12(b)(6)), and failure to allege the claim of fraud with sufficient particularity (Rule 9(b)). Because the Court finds the 12(b)(6) issue dispositive, it will move directly to that discussion.

"The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief. Thus, the provision must be read in conjunction with [the liberal pleading requirements of] Rule 8(a)." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1356, at 590 (1969) (footnote omitted). "For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true." *Id.*, § 1357 at 594; *see also Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *O'Brien v. DiGrazia*, 544 F.2d 543, 545 (1st Cir.1976). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Applying these principles to the present case, the Court determines that all claims against Gershuny should be dismissed.

Count One of the Amended Complaint alleges that all Defendants, including Gershuny, violated section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (1982), and Rule 10b–5, 17 C.F.R. § 240.-10b–5 (1986).[3] Even accepting the allegations of the Amended Complaint as true, however, Plaintiff has failed to state a claim against Gershuny.

In order to state a claim for relief under section 10(b) a plaintiff must allege that, in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on defendant's actions caused him injury.

represent. (Amended Complaint, ¶¶ 16, 25, 27, 28, 30).

**3.** Section 78j provides, in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

....

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1982).

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. 240.10b–5 (1986).

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985), citing *Chemetron Corp. v. Business Funds, Inc.,* 718 F.2d 725, 728 (5th Cir. 1983); *Zobrist v. Coal–X, Inc.,* 708 F.2d 1511, 1516 (10th Cir.1983); *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 381 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

█ A careful examination of Plaintiff's Amended Complaint indicates that Plaintiff cannot state a section 10(b)/Rule 10b–5 claim against Gershuny. Paragraphs 24 through 44 set forth allegations of fraudulent actions and schemes to defraud, yet those paragraphs relating to the material elements of a 10b–5 claim explicitly refer to Defendants "other than Gershuny." Plaintiff alleges that all Defendants *except Gershuny* and Cipolla knew of the questionable status of various re-insurers used by "these defendants" (not Gershuny) to project false information and manipulate the stock (Amended Complaint ¶ 27); that the misfeasance and malfeasance of Defendants *other than Gershuny* resulted in a decrease in North East's total equity or surplus from seven million dollars ($7,000,-000) to an insignificant amount (*id.,* ¶ 30); that all Defendants *except Gershuny* and Cipolla deliberately under-reserved North East over a substantial period of years (*id.,* ¶ 31); that the purpose of these deliberately fraudulent and deceptive practices was to allow Defendants *other than Gershuny* and Cipolla to continue improper speculative day trading on the bond market in a negligent manner (*id.,* ¶ 32); that the individual defendants *other than Gershuny,* as directors and officers of North East, falsely represented to Plaintiff an intention to sell stock to Plaintiff (*id.,* ¶ 35); and that Defendants *other than Gershuny,* contrary to the best interests of North East, adopted an indemnification plan for officers and directors of North East without shareholder approval and entered into a contract with H. Gunty that would allow him to "abscond" with significant corporate assets in the event he loses control (*id.,* ¶¶ 41–43). Accepting these allegations as true, Plaintiff himself has excluded Gershuny from the realm of a section 10(b)/Rule 10b–5 violation, because Plaintiff has failed to tie Gershuny to any false misrepresentations or omissions made knowingly in connection with the purchase or sale of securities that resulted in any injury to Plaintiff.

Plaintiff does allege that Gershuny knowingly acted as a "front" for Nicholas Neu as purchaser of a controlling interest in North East (*id.,* ¶ 36–37); Plaintiff further alleges that Neu could not present himself as the disclosed purchaser because Neu would not be able to gain the approval of regulatory authorities (*id.,* ¶ 39). While mindful that "the antifraud provisions of the federal securities laws provide an extremely broad canopy for the protection of securities traders," *Dopp v. Franklin National Bank,* 374 F.Supp. 904, 910 (S.D.N.Y.1974), the Court nevertheless concludes that Plaintiff's allegations relating to Gershuny's "fronting" are not sufficient to state a section 10(b)/Rule 10b–5 claim. Plaintiff has failed to allege that *Gershuny,* rather than the other Defendants, made *any* representations to Plaintiff or to other traders, or that Gershuny failed to make any disclosures which he had a duty to make, in connection with the purchase or sale of securities. Gershuny, as a would-be *buyer* of North East stock, did not stand in a fiduciary relationship to Plaintiff or other traders, and therefore had no duty under section 10(b)/Rule 10b–5 to reveal his status as a "front" for Neu. *See, e.g., Strong v. France,* 474 F.2d 747 (9th Cir.1973); *Gold v. DCL, Inc.,* 399 F.Supp. 1123 (S.D. N.Y.1973); *Branham v. Material Systems Corp.,* 354 F.Supp. 1048 (S.D.Fla.1973); *Rothschild v. Teledyne, Inc.,* 328 F.Supp. 1054 (N.D.Ill.1971).

It may be that Plaintiff's real claim is an "aiding and abetting" allegation.[4] Based

---

4. To establish aiding and abetting liability under securities law, the pleading must allege and the plaintiff must prove three elements:

(1) the existence of a securities law violation by the primary (as opposed to the aiding and abetting) party;
(2) "knowledge" of this violation on the part of the aider and abettor; and

on the Amended Complaint now before it, however, the Court is not willing to imply such an interpretation. Count One of the Amended Complaint is therefore dismissed as to Defendant Gershuny.

Counts Four through Six of the Amended Complaint allege that *all* Defendants violated the federal RICO statute, 18 U.S.C. §§ 1961–68; specifically, the Amended Complaint seeks relief for violations of 18 U.S.C. § 1962(b)–(d).[5]

Each subsection of section 1962 defines an unlawful act in terms of a "pattern of racketeering activity." As defined by the statute, a pattern of racketeering activity "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Mail and wire fraud, as well as any offense involving fraud in the sale of securities, are among the "racketeering activities" enumerated in the statute. 18 U.S.C. § 1961(1)(B), (D).

▮ After careful examination of the Amended Complaint, the Court concludes that Plaintiff has not alleged a "racketeering activity" within the meaning of the statute. First, as discussed above, Plaintiff has failed to state a section 10(b)/Rule 10b–5 claim against Gershuny; thus, Plaintiff's RICO claim as to Gershuny cannot be based on securities fraud or on Gershuny's alleged "fronting" activity. Second, although Counts Four through Six aver that "all defendants" engaged in racketeering activity including mail and wire fraud, the specific factual allegations set forth earlier in the Amended Complaint do not implicate Gershuny in wire or mail fraud or other "reporting" activity. *See* Amended Complaint ¶¶ 26, 28, 31. Therefore, the "racketeering activity" essential to a RICO claim, at least with respect to Gershuny, cannot be based on mail or wire fraud. Because "racketeering activity" is an essential element to a section 1962 violation, and because Plaintiff has failed to allege that element, Counts Four through Six must be dismissed for failure to state a claim. *See Sedima, S.P.R.L. v. Imrex Company,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) ("[a] violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3)

---

(3) "substantial assistance" by the aider and abettor in the achievement of the primary violation.

*Bloor v. Carro, Spanbock, Londin, Rodman & Foss,* 754 F.2d at 62; *see also Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47–48 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

5. Section 1962 provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity of the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section. 18 U.S.C. § 1962 (1982).

through a pattern (4) of racketeering activity").[6]

Having determined that Plaintiff's allegations of securities fraud and racketeering are not sufficient to state a claim upon which relief may be granted, the remaining counts are easily disposed of as they relate to Gershuny. Dismissal of the securities fraud and racketeering counts—claims based on federal law—leaves only the state law shareholders derivative action (Count II) and the common-law fraud action (Count III). As to those remaining claims, this Court's power is based on the doctrine of pendent jurisdiction.

■ The derivative action must be dismissed against Gershuny in any event. Although Count Two purports to incorporate all previous paragraphs by reference, it specifically asserts that "[t]he actions of Defendants *other than Gershuny* aforestated were misfeasant and malfeasant and in violation of their fiduciary duty...." (Amended Complaint, ¶ 52 (emphasis added)). The specific exclusion of Gershuny regarding the derivative claim clearly calls for a dismissal of Count Two as to Gershuny.

■ The doctrine of pendent jurisdiction is thus applicable in this case only to the common-law fraud action. The Supreme Court has explained the contours of that doctrine as follows:

[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Because the Court has determined that dismissal of the federal claims is proper, it likewise concludes that the language in *Gibbs* counsels dismissal of the remaining pendent claim against Gershuny. It is true that the common-law fraud claim will still be litigated at trial against the remaining Defendants. Nevertheless, the Court is of the opinion that fairness to Gershuny supports dismissing the common-law fraud claim, as well as the federal claims, as they relate to him. Gershuny should not be made to stand as a Defendant with others who face serious federal claims when Plain-

6. Because the Court concludes that Plaintiff's failure to allege facts implicating Gershuny in any "racketeering activity" is fatal to his RICO claim, it is not necessary to discuss the more complicated issue of whether the Amended Complaint sufficiently alleges a "pattern of racketeering activity."

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court explained that while a "pattern" *requires* at least two acts of racketeering activity, it does not *mean* two such acts. "The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.'" *Id.* at 3285, n. 14. The Court went on to quote a Senate Report indicating that the target of RICO is not sporadic activity, and that it is therefore the factor of "continuity plus relationship" that establish a pattern. *Id.*

Although the First Circuit has not addressed this requirement in detail, it has suggested in one case that multiple activities over time resulting in the removal of a plaintiff from his own business do not constitute a "pattern of racketeering activity." *Ortiz Villafane v. Segarra*, 797 F.2d 1 (1st Cir.1986). It is not clear, however, whether the fatal flaw in *Segarra* went to the "pattern" requirement or the requirement of "racketeering activity." *See also Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1535–36 (D.Mass.1986) (pattern exists "if one scheme to defraud is implemented through acts of mail or wire fraud substantially separated in time or substance"); *United Fish Co. v. Barnes*, 627 F.Supp. 732, 735 (D.Me.1986) (multiple mail and telephone transactions all relating to one fraudulent scheme "demonstrate[d] continuity and relationship sufficient to allege a pattern of racketeering activity"); *Hunt v. Weatherbee*, 626 F.Supp. 1097, 1104 (D.Mass.1986) (allegation that two occasions of alleged coercion to withdraw complaints against union were examples of prolonged pattern and practice of sexual harassment constituted a "pattern").

tiff has been unable to allege facts implicating Gershuny in the same or similar illegal activity.

For the foregoing reasons, all counts of the Amended Complaint are dismissed as to Defendant Gershuny. Noting that a Rule 12(b)(6) dismissal is generally *not* on the merits, 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1357 at 611 (1969), the Court grants Plaintiff leave to amend within twenty days of the Order hereon. The Court observes, however, that Plaintiff has already submitted one Amended Complaint. The Court would be reluctant to indulge the Plaintiff with additional opportunities to amend in the future.

### III. CLASS CERTIFICATION

Rule 23 of the Federal Rules of Civil Procedure states that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed.R.Civ.P. 23(c)(1)." "Either plaintiff or defendant may move for a determination under Rule 23(c)(1)." 7B C. Wright & A. Miller, *Federal Practice and Procedure,* § 1785 at 89; *see also City of New York v. International Pipe and Ceramics Corp.,* 410 F.2d 295, 297 (2d Cir. 1969); *Galloway v. American Brands, Inc.,* 81 F.R.D. 580 (E.D.N.C.1978).[7]

In the present case, nearly six months have elapsed since Plaintiff first filed his complaint.[8] During that time, the parties have been occupied with Defendants' motion to transfer venue,[9] Defendant Gershuny's motion to dismiss all claims as to him,[10] and the motion of all Defendants except Gershuny to deny class certification. The Court cannot accept wholesale Plaintiff's contention that this "flurry of motion practice" has prevented Plaintiff from actively conducting discovery, especially when it considers that the order to transfer

venue was entered four months ago. The Court does recognize that, because this is a complex securities fraud case, "[s]ubstantial discovery may be needed to refine the issues and to furnish the factual predicates before an informed determination can be made regarding certification of a class." 1–Part 2 *Moore's Federal Practice,* ¶ 30.11 (Manual for Complex Litigation). On the other hand, the Court is also mindful that fairness to the defendants and to potential class members requires an expeditious resolution of the class certification question. "The longer the certification is postponed, the less the value of the notice to allow the absent class members to intervene or express their concerns to the court." 7B C. Wright & A. Miller, *Federal Practice and Procedure,* § 1785 at 91–92.

Given the present status of this case, the Court is of the opinion that it will be most efficient and fair to all parties concerned to resolve the class certification question as soon as possible. To that end, the Court will allow Plaintiff sixty days from the date of this order to conduct such additional discovery as is necessary to present the class certification question for the Court's determination. At the end of that period, the Plaintiff may bring the certification forward for the Court's consideration.

So ORDERED.

---

7. If neither party moves, the court has an independent obligation to decide whether the class action is maintainable. 7B C. Wright & A. Miller, *Federal Practice and Procedure,* § 1785 at 89–92.

8. The original complaint was filed on September 2, 1986, in United States District Court for the Southern District of New York.

9. Defendant Gershuny did not join the other Defendants in the motion to transfer venue. The motion was granted and the transfer ordered on October 14, 1986.

10. *See supra* Part II.