CITY CAB CO., Don–Dee–Cin Corporation, Elizabeth McDonough, Town Taxi Co., and Sanford Taxi, Inc., Plaintiffs,

v.

Joseph T. EDWARDS, and, William G. Diamond, Defendants.

Civ. No. 90–0171–P.

United States District Court,
D. Maine.

Sept. 13, 1990.

758

Robert S. Hark, Isaacson & Raymond, Lewiston, Me., for plaintiffs.

Peter W. Brann, Asst. Atty. Gen., Augusta, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

This matter comes before the Court on Defendants' motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. The motion will be denied for the reasons set forth below.

## I. BACKGROUND

Plaintiffs City Cab Co., Don–Dee–Cin Corporation (d/b/a Two–in–One Taxi), Town Taxi Co., Elizabeth McDonough (d/b/a ABC Taxi), and Sanford Taxi, Inc. operate taxi services in various municipalities under licenses or other certificates from the state of Maine. Plaintiffs participate in a "purchasing group" through which they obtain low-cost liability insurance for their businesses.[1]

On May 16, 1990, Defendant G. William Diamond, Maine's Secretary of State, informed Plaintiffs by letter through a Deputy Secretary of State that their insurance carrier, Bel–Aire Insurance Company of St. Louis, Missouri, was no longer authorized to offer coverage in Maine. Defendant Joseph Edwards, Superintendent of Insurance for Maine, certifies companies authorized to provide insurance in Maine. The Secretary of State's letter implemented Public Law 1990, Chapter 724 (hereinafter P.L.1990, Chapter 724) which amends the Maine Liability Risk Retention Act to require that purchasing groups buy insurance from insurers licensed by Maine or from a licensed agent or broker acting pursuant to the surplus lines laws and regulations.[2] P.L.1990, ch. 724 (amending 24–A M.R.S.A. §§ 6097, 6099(1)). Plaintiffs' insurance carrier did not meet the requirements of the new enactment. As a result, Plaintiffs have been required by P.L.1990, Chapter 724 to obtain an alternative source for liability insurance or suffer the suspension of the state approval necessary to continue providing taxi service.

---

1. The federal Product Liability Risk Retention Act defines a "purchasing group" as "any group of persons which has as one of its purposes the purchase of product liability or completed operations liability insurance on a group basis; ..."

15 U.S.C. § 3901(a)(5) (1982).

2. The Superintendent of Insurance publishes lists of unauthorized insurers providing certain insurance coverages not available from authorized insurers. These forms of coverage, called "surplus lines," may be procured through licensed brokers. *See* 24–A M.R.S.A. §§ 2003, 2004 & 2007.

In the absence of relief from the amended statute, Plaintiffs allege that they will be forced by higher insurance premiums to cease or substantially reduce their taxi service operations. To avoid that result, Plaintiffs filed a complaint with the Court on July 18, 1990, seeking declaratory and injunctive relief from the implementation of P.L.1990, Chapter 724.[3]

Specifically, Plaintiffs argue that the new Maine statute both on its face and as applied in this instance is preempted by federal law and therefore cannot be enforced without offending the Supremacy Clause of the federal Constitution. U.S. Const. art. VI, cl. 2. Further, Plaintiffs complain that P.L.1990, Chapter 724 creates an arbitrary legal classification with no reasonable relationship to the purported legislative end thereby violating the Fourteenth Amendment to the United States Constitution. Defendants now move to dismiss the Complaint on the grounds that it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

## II. MOTION TO DISMISS

 A motion to dismiss under Rule 12(b)(6) tests the formal sufficiency of a plaintiff's pleadings and therefore must be considered in light of the liberal notice pleading requirements of the Federal Rules of Civil Procedure. *Mladen v. Gunty,* 655 F.Supp. 455, 457 (D.Me.1987) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1356, at 590 (1969)).[4] "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The Court is directed to accept as true all of the plaintiff's allegations and interpret all facts contained in the complaint most favorably to the plaintiff. *See Miree v. De Kalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

The Complaint alleges that P.L.1990, Chapter 724 is preempted by the federal Product Liability Risk Retention Act of 1981, 15 U.S.C. § 3901 *et seq.* (the Risk Retention Act), and, as a result, enforcement of the state law violates the federal Constitution's Supremacy Clause. In particular, Plaintiffs assert that Maine's new requirement that purchasing groups buy insurance only from insurers admitted in Maine or from licensed surplus lines agents or brokers runs afoul of three provisions of the Risk Retention Act which exempt purchasing groups from certain restrictive state laws, rules, regulations, and orders.

Title 15 U.S.C. § 3903(a)(2) exempts purchasing groups from state laws which would "make it unlawful for an insurer to provide or offer to provide insurance on a basis providing, to a purchasing group or its members, advantages, based on their loss and expense experience, not afforded to other persons with respect to rates, policy forms, coverages, or other matters." Section 3903(a)(3) exempts purchasing groups from state laws which would "prohibit a purchasing group or its members from purchasing insurance on the group basis described in [section 3903(a)(2)]." Finally, section 3903(a)(8) prohibits any state law which would "otherwise discriminate against a purchasing group or any of its members."[5]

---

**3.** A motion for a preliminary injunction has become moot. In conference with the Honorable David Cohen, U.S. Magistrate, on August 8, 1990, Plaintiffs acknowledged that they had succeeded in acquiring liability insurance from a source approved by the Maine Bureau of Insurance.

**4.** As a preliminary matter, the Court notes that this motion to dismiss would not dispose of the entire Complaint even were it to be granted. Defendants' motion addresses only the preemption issues contained in ¶¶ 19(a)–(c) & 20 of the Plaintiffs' Complaint. There is no discussion in

the motion or the supporting memorandum of the Fourteenth Amendment question contained in ¶ 19(d) of the Complaint. The Fourteenth Amendment question therefore remains for trial, absent future dispositive pre-trial motions, regardless of the outcome of this motion.

**5.** The Act was amended in 1986 to expand the exemptons for purchasing groups and risk retention groups beyond product liability insurance to include all types of liability insurance and to guarantee proper regulation of purchasing groups and risk retention groups. Except as noted in the body of this opinion, those amend-

Plaintiffs make two arguments, which must be considered individually, regarding the alleged conflict between the state and federal statutes. First, Plaintiffs argue that P.L.1990, Chapter 724, on its face, is preempted by the above described provisions of the federal Risk Retention Act. Second, Plaintiffs argue that the protections for purchasing groups included in the Risk Retention Act are violated by P.L. 1990, Chapter 724 as-applied in this instance. Without a factual record before it, the Court cannot now say that no state of facts can exist which would support Plaintiffs' second argument.

### III. PREEMPTION AND LEGISLATIVE HISTORY

A fundamental precept of the United States Constitution is that "any state law, however clearly within a State's acknowledged powers, which interferes with or is contrary to federal law, must yield." *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962). *See Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). To avoid an unnecessary or unwarranted disruption of the delicate balance between the constitutional mandate of federal supremacy and state sovereignty, analyses of federal statutes in fields traditionally occupied by the states begin with "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Congress may explicitly preempt state law in the statute's language or imply its preemptive intent in the statute's structure and purpose. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In the absence of express preemptive language, Congress may legislate comprehensively, thereby occupying the field of regulation and leaving no room for state action. *Rice*, 331 U.S. at 230, 67 S.Ct. at 1152. Finally, a state law

which actually conflicts with federal law is invalidated, such as when it may be impossible to comply with both state and federal law, or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See also Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).

Congress has certainly not occupied the field of regulation of the insurance industry. In 1945, Congress enacted the McCarran–Ferguson Act which expressly left regulation of the business of insurance to the states. 15 U.S.C. § 1011, *et seq*. The liability insurance crisis of the late 1970s and the resulting need to reduce insurance premiums for small businesses through federal action lead Congress to launch a limited intervention into state regulation through the Risk Retention Act of 1981. 15 U.S.C. §§ 3901–3904.

Before adopting the Risk Retention Act of 1981, Congress considered and rejected a comprehensive scheme of federal regulation of risk retention groups and purchasing groups. *Insurance Co. of Pennsylvania v. Corcoran*, 850 F.2d 88, 91 (2d Cir. 1988) (citing H.R.Rep. No. 190, 97th Cong., 1st Sess. 6–7, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1432, 1435). Instead, Congress chose to encourage the formation of purchasing groups which enable insureds to buy lower-cost product liability insurance on a group basis and the creation of self-insuring "risk retention groups." H.R.Rep. No. 190, 97th Cong., 1st Sess. 4, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1432, 1432.

Assessing whether there exists a conflict between state and federal statutes is "essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Perez v. Campbell*, 402 U.S. 637, 644, 91 S.Ct. 1704, 1708, 29 L.Ed.2d 233

---

ments are not relevant to this case. *See* H.R. Rep. No. 865, 99th Cong, 2nd Sess. 7, *reprinted*

*in*, 1986 U.S.Code Cong. & Admin.News 5303, 5304.

(1971). Of course, when the language of the federal statute unambiguously precludes certain state legislation, no further analysis is necessary. *Exxon Corp. v. Hunt,* 475 U.S. 355, 362, 106 S.Ct. 1103, 1109, 89 L.Ed.2d 364 (1986). In the absence of an express mandate for preemption, the Court is directed to consult the legislative history, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 147, 83 S.Ct. 1210, 1220, 10 L.Ed.2d 248 (1963), having a particular sensitivity to the claims of congressional intent. *United States v. Smith,* 726 F.2d 852, 859 (1st Cir.1984).

### A.

The express preemption of state law with respect to risk retention groups is expansive: "a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would—(1) make unlawful, or *regulate, directly or indirectly,* the operation of a risk retention group...." 15 U.S.C. § 3902(a) (emphasis added).[6] In contrast, the protections pro-

vided by Congress to purchasing groups are limited by the plain language and structure of the statute to a list of restrictive state regulations. *See* 15 U.S.C. § 3902(a)(1)-(8)[7]; *Swanco Ins. Co. v. Hager,* 879 F.2d 353, 357-58 (8th Cir.1989); *Corcoran,* 850 F.2d at 91. To reinforce the narrowness of the exemptions provided purchasing groups, Congress amended the Act in 1986 to add section 3903(g): "Nothing in this chapter shall be construed to affect the authority of any State to make use of any of its powers to enforce the laws of such State with respect to which a purchasing group is not exempt under this chapter." 15 U.S.C. § 3903(g).[8]

In short, Plaintiffs' facial challenge to P.L.1990, Chapter 724 under a preemption theory can succeed only with a showing that the Maine statute, on its face, regulates purchasing groups in a manner expressly prohibited by section 3903(a). Defendants correctly rely on recent opinions from the Second, Eighth and Eleventh Circuits for their argument that Congress intended to exempt purchasing groups only from the state laws expressly included in

---

**6.** The statute then goes on to provide a short list of limited regulatory activities in which states may engage. *See* 15 U.S.C. § 3902(a)(1)(A)-(I).

**7.** Section 3903 reads in pertinent part:

(a) ... a purchasing group is exempt from any state law, rule, regulation, or order to the extent that such law, rule, regulation, or order would—
(1) prohibit establishment of a purchasing group;
(2) make it unlawful for an insurer to provide or offer to provide insurance on a basis providing, to a purchasing group or its members, advantages, based on their loss and expense experience, not afforded to other persons with respect to rates, policy forms, coverages, or other matters;
(3) prohibit a purchasing group or its members from purchasing insurance on a group basis described in paragraph (2) of this subsection;
(4) prohibit a purchasing group from obtaining insurance on a group basis because the group has not been in existence for a minimum period of time or because any member has not belonged to the group for a minimum period of time;
(5) require that a purchasing group must have a minimum number of members, com-

mon ownership or affiliation, or a certain legal form;
(6) require that a certain percentage of a purchasing group must obtain insurance on a group basis;
(7) require that any insurance policy issued to a purchasing group or any members of the group be countersigned by an insurance agent or broker residing in the State; or
(8) otherwise discriminate against a purchasing group or any of its members.
15 U.S.C. § 3903(a).

**8.** The legislative history of section 3903(g) reinforces Defendants' arguments and the conclusions arrived at by the three circuit courts:

In enacting the 1981 Act, it was recognized that there were a number of identifiable kinds of State laws that prevented the establishment and functioning of the purchasing groups. Those laws were listed in Section 4(a) [section 3903(a) ] of the 1981 Act and it is those laws that are preempted. Subject to the prohibition on discrimination against purchasing groups, the states remained able to apply all their other laws to purchasing groups and those dealing with such groups. This approach is carried forward into the 1986 Act.
H.R.Rep. No. 865, 99th Cong., 2nd Sess. 19, *reprinted in* 1986 U.S.Code Cong. & Admin. News 5303, 5316.

section 3903(a) of the Risk Retention Act. *See generally Florida Dept. of Insurance v. National Amusement Purchasing Group,* 905 F.2d 361 (11th Cir.1990); *Swanco,* 879 F.2d 353 (8th Cir.1989); *Corcoran,* 850 F.2d 88 (2d Cir.1988). Because P.L.1990, Chapter 724 does not facially conflict with the Risk Retention Act, it is not preempted. No set of facts could establish that P.L.1990, Chapter 724, on its face, prohibits the establishment of a purchasing group or makes it unlawful for insurers to provide advantages to purchasing groups based on their loss and expense experience. Further, the face of the statute imposes no burden on purchasing groups greater than those imposed on other insureds, *see* 24-A M.R.S.A. § 404; therefore, P.L.1990, Chapter 724 is not discriminatory on its face. Plaintiffs' first argument fails.

### B.

The three cases relied on by Defendants in this motion to dismiss are, however, inapposite to the issues raised by Plaintiffs' as-applied argument. Plaintiffs correctly point out in their Memorandum in Opposition to Motion to Dismiss (Docket No. 6M, hereinafter Plaintiffs' Memorandum) that "[a]ll of the cited decisions relating to the treatment of purchasing groups under the Risk Retention Act are based upon the assumption that the state regulation in question is non-discriminatory." Plaintiffs' Memorandum at 2. *Swanco, Corcoran,* and *National Amusement* address only the issue of whether the federal Risk Retention Act preempts particular classes of state regulation not expressly included in section 3903 which otherwise burden the formation and operation of purchasing groups. The Court concurs with the conclusion reached on this issue by those circuit courts.

However, section 3903(a) does not by its plain language limit its protection of purchasing groups to only state laws which violate, *on their face,* the specifics of that section of the Risk Retention Act. To ex-

clude from the scope of section 3903(a) those state laws which *have the effect* of prohibiting the establishment of purchasing groups, or making it unlawful for insurers to provide advantages . to purchasing groups based on their loss and expense experience, or otherwise discriminating against purchasing groups would substantially undermine Congress's stated purpose for adopting section 3903(a): "It is the purpose of section 104 [section 3903] to preempt State laws which restrict or hinder the creation or operation of [purchasing] groups or other arrangements made to take advantage of the mass marketing programs of any insurance company...." H.R.Rep. 190, 97th Cong., 1st Sess. 19, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1432, 1448.

In addition, Plaintiffs allege that Defendants apply Maine's facially neutral statute in a manner which discriminates against out-of-state insurers. The effect is alleged to be discrimination against purchasing groups, including Plaintiffs' group, of a type expressly prohibited by section 3903(a)(8). The Court is fully satisfied that the Risk Retention Act's broad anti-discrimination language, read in the context of Congress's stated intent, certainly prohibits disparate application of facially neutral statutes.

If Plaintiffs can prove that P.L.1990, Chapter 724 effects results which conflict with the express commands of section 3903(a)(1), (2) or (8), then this Court cannot say that the statute is saved from preemption merely by clever legislative draftsmanship.[9] It is impossible for the Court to now state, on the basis of the existing record, whether such a conclusion can be substantiated. Accordingly, Defendants' motion is DENIED.

So ORDERED.

---

**9.** The Court need not and does not reach the issue of the standard of proof of discrimination Plaintiff must meet or whether Congress intend-

ed to use the word "discriminate" in the same manner as it has been interpreted in civil rights or antitrust law.