MIREE ET AL. *v.* DeKALB COUNTY, GEORGIA, ET AL.

No. 76–607.   Argued April 27, 1977—Decided June 21, 1977*

REHNQUIST, J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined.   BURGER, C. J., filed an opinion concurring in the judgment, *post,* p. 34.

---

*Together with No. 76–659, *Phillips* v. *DeKalb County, Georgia, et al.;* No. 76–700, *Fireman's Fund Insurance Co.* v. *DeKalb County, Georgia, et al.;* and No. 76–722, *Fields* v. *DeKalb County, Georgia, et al.,* also on certiorari to the same court.

*Alan W. Heldman* and *J. Arthur Mozley* argued the cause for petitioners in all cases. With *Mr. Heldman* on the briefs for petitioners in No. 76–607 were *Gilbert E. Johnston* and *Hugh M. Dorsey. Mr. Mozley* filed briefs for petitioner in No. 76–700. *A. Russell Blank, Claude R. Ross,* and *Baxter H. Finch* filed a brief for petitioner in No. 76–659. *Joseph Claude Freeman, Jr.,* filed a brief for petitioner in No. 76–722.

*F. Clay Bush* argued the cause and filed a brief for respondent DeKalb County in all cases.

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

These consolidated cases arise out of the 1973 crash of a Lear Jet shortly after takeoff from the DeKalb-Peachtree Airport. The United States Court of Appeals for the Fifth Circuit, en banc, affirmed the dismissal of petitioners' complaint against respondent DeKalb County (hereafter respondent), holding that principles of federal common law were applicable to the resolution of petitioners' breach-of-contract claim. We granted certiorari to consider whether federal or state law should have been applied to that claim; we conclude that the latter should govern.

I

Petitioners are, respectively, the survivors of deceased passengers, the assignee of the jet aircraft owner, and a burn victim. They brought separate lawsuits, later consolidated, against respondent in the United States District Court for the Northern District of Georgia.[1] The basis for federal jurisdiction was diversity of citizenship, 28 U. S. C. § 1332, and the complaints asserted that respondent was liable on three inde-

---

[1] Petitioners also sued the United States under the Federal Tort Claims Act. See 28 U. S. C. §§ 1346 (b), 2671 *et seq.* The litigation before us arises out of the District Court's granting of respondent DeKalb County's motion to dismiss and the entry of final judgment under Fed. Rule Civ. Proc. 54 (b). The United States has made no similar motion, and is not a party to the cases in this Court.

pendent theories: negligence, nuisance, and breach of contract. The District Court granted respondent's motion to dismiss each of these claims. The courts below have unanimously agreed that the negligence and nuisance theories are without merit; only the propriety of the dismissal of the contract claims remains in the cases.

Petitioners seek to impose liability on respondent as third-party beneficiaries of contracts between it and the Federal Aviation Administration (FAA). Their complaints allege that respondent entered into six grant agreements with the FAA. *E. g.,* App. 15.[2] Under the terms of the contracts respondent agreed to

> "take action to restrict the use of land adjacent to or in the immediate vicinity of the Airport to activities and purposes compatible with normal airport operations including landing and takeoff of aircraft." *Id.,* at 19.

Petitioners assert that respondent breached the FAA contracts by owning and maintaining a garbage dump adjacent to the airport, and that the cause of the crash was the ingestion of birds swarming from the dump into the jet engines of the aircraft.

Applying Georgia law, the District Court found that petitioners' claims as third-party beneficiaries under the FAA contracts were barred by the county's governmental immunity, and dismissed the complaints under Fed. Rule Civ. Proc. 12 (b)(6). A divided panel of the Court of Appeals decided that under state law petitioners could sue as third-party beneficiaries and that governmental immunity would not bar the suit. *Miree* v. *United States,* 526 F. 2d 679 (1976). The dissenting judge argued that the court should have applied federal rather than state law; he concluded that under the principles of federal common law the petitioners in this case

---

[2] In reviewing the sufficiency of a complaint in the context of a motion to dismiss we, of course, treat all of the well-pleaded allegations of the complaint as true.

did not have standing to sue as third-party beneficiaries of the contracts. Sitting en banc, the Court of Appeals reversed the panel on the breach-of-contract issue and adopted the panel dissent on this point as its opinion. *Miree* v. *United States,* 538 F. 2d 643 (1976). Judge Morgan, who had written the panel opinion, argued for five dissenters that there was no identifiable federal interest in the outcome of this diversity case, and thus that federal common law had no applicability.

## II

Since the only basis of federal jurisdiction alleged for petitioners' claim against respondent is diversity of citizenship, 28 U. S. C. § 1332, the case would unquestionably be governed by Georgia law, *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (1938), but for the fact that the United States is a party to the contracts in question, entered into pursuant to federal statute. See Airport and Airway Development Act of 1970, 84 Stat. 219, as amended, 49 U. S. C. § 1701 *et seq.* (1970 ed. and Supp. V). The en banc majority of the Court of Appeals adopted, by reference, the view that, given these factors, application of federal common law was required:

"Although jurisdiction here is based upon diversity, the contract we are interpreting is one in which the United States is a party, and one which is entered into pursuant to authority conferred by federal statute. The necessity of uniformity of decision demands that federal common law, rather than state law, control the contract's interpretation. *United States* v. *Seckinger,* 1970, 397 U. S. 203 . . . ; *Smith* v. *United States,* 5 Cir. 1974, 497 F. 2d 500; *First National Bank* v. *Small Business Administration,* 5 Cir. 1970, 429 F. 2d 280." *Miree* v. *United States,* 526 F. 2d, at 686 (footnote omitted).

We do not agree with the conclusion of the Court of Appeals. The litigation before us raises no question regarding the liability of the United States or the responsibilities of the

United States under the contracts. The relevant inquiry is a narrow one: whether petitioners as third-party beneficiaries of the contracts have standing to sue respondent. While federal common law may govern even in diversity cases [3] where a uniform national rule is necessary to further the interests of the Federal Government, *Clearfield Trust Co.* v. *United States,* 318 U. S. 363 (1943), the application of federal common law to resolve the issue presented here would promote no federal interests even approaching the magnitude of those found in *Clearfield Trust:*

> "The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty. It would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states. The desirability of a uniform rule is plain." *Id.,* at 367.

But, in this case, the resolution of petitioners' breach-of-contract claim against respondent will have no direct effect upon the United States or its Treasury.[4] The Solicitor General, waiving his right to respond in these cases, advised us:

> "In the course of the proceedings below, the United States determined that its interests would not be directly affected by the resolution of these issue[s] and there-

---

[3] The *Clearfield Trust* rule may apply in diversity cases. See *Sola Electric Co.* v. *Jefferson Electric Co.,* 317 U. S. 173 (1942); *Bank of America Nat. Trust & Sav. Assn.* v. *Parnell,* 352 U. S. 29 (1956); *Wallis* v. *Pan American Petroleum Corp.,* 384 U. S. 63 (1966).

[4] There is no indication that petitioners' tort claim against the United States, see n. 1, *supra,* will be affected by the resolution of this issue. Indeed, the Federal Tort Claims Act itself looks to state law in determining liability. 28 U. S. C. § 1346 (b).

fore did not participate in briefing or argument in the court of appeals. In view of these considerations, the United States does not intend to respond to the petitions unless it is requested to do so by the Court."

The operations of the United States in connection with FAA grants such as these are undoubtedly of considerable magnitude. However, we see no reason for concluding that these operations would be burdened or subjected to uncertainty by variant state-law interpretations regarding whether those with whom the United States contracts might be sued by third-party beneficiaries to the contracts. Since only the rights of private litigants are at issue here, we find the *Clearfield Trust* rationale inapplicable.

We think our conclusion that these cases do not fit within the *Clearfield Trust* rule follows from the Court's later decision in *Bank of America Nat. Trust & Sav. Assn.* v. *Parnell,* 352 U. S. 29 (1956), in which the Court declined to apply that rule in a fact situation analogous to this one. *Parnell* was a diversity action between private parties involving United States bonds. The Bank of America had sued Parnell to recover funds that he had obtained by cashing the bonds, which had been stolen from the bank. There were two issues: whether the bonds were "overdue" and whether Parnell had taken the bonds in good faith. The Court of Appeals, over a dissent, applied federal law to resolve both issues; this Court reversed with respect to the good-faith issue. After stressing that the basis for the *Clearfield Trust* decision was that the application of state law in that case would "subject the rights and duties of the United States to exceptional uncertainty," 352 U. S., at 33, the Court rejected the application of the *Clearfield Trust* rationale:

> "Securities issued by the Government generate immediate interests of the Government. These were dealt with in *Clearfield Trust* and in *National Metropolitan Bank* v. *United States,* 323 U. S. 454. But they also

radiate interests in transactions between private parties. The present litigation is purely between private parties and does not touch the rights and duties of the United States." 352 U. S., at 33.

The Court recognized, as we do here, that the application of state law to the issue of good faith did not preclude the application of federal law to questions directly involving the rights and duties of the Federal Government, and found:

"Federal law of course governs the interpretation of the nature of the rights and obligations created by the Government bonds themselves. A decision with respect to the 'overdueness' of the bonds is therefore a matter of federal law, which, in view of our holding, we need not elucidate." *Id.*, at 34.

The parallel between *Parnell* and these cases is obvious. The question of whether petitioners may sue respondent does not require decision under federal common law since the litigation is among private parties and no substantial rights or duties of the United States hinge on its outcome. On the other hand, nothing we say here forecloses the applicability of federal common law in interpreting the rights and duties of the United States under federal contracts.

Nor is the fact that the United States has a substantial interest in regulating aircraft travel and promoting air travel safety sufficient, given the narrow question before us, to call into play the rule of *Clearfield Trust*. In *Wallis* v. *Pan American Petroleum Corp.*, 384 U. S. 63, 68 (1966), the Court discussed the nature of a federal interest sufficient to bring forth the application of federal common law:

"In deciding whether rules of federal common law should be fashioned, normally the guiding principle is that a *significant conflict between some federal policy or interest and the use of state law in the premises must first be specifically shown.* It is by no means enough that, as

we may assume, Congress could under the Constitution readily enact a complete code of law governing transactions in federal mineral leases among private parties. Whether latent federal power should be exercised to displace state law is primarily a decision for Congress." (Emphasis added.)

The question of whether private parties may, as third-party beneficiaries, sue a municipality for breach of the FAA contracts involves this federal interest only insofar as such lawsuits might be thought to advance federal aviation policy by inducing compliance with FAA safety provisions. However, even assuming the correctness of this notion, we adhere to the language in *Wallis,* cited above, stating that the issue of whether to displace state law on an issue such as this is primarily a decision for Congress. Congress has chosen not to do so in this case.[5] Actually the application of federal common law, as interpreted by the Court of Appeals here would frustrate this federal interest *pro tanto,* since that court held that this breach-of-contract lawsuit would not lie under federal law. On the other hand, at least in the opinion of the majority of the panel below, Georgia law would countenance the action. Even assuming that a different result were to be reached under federal common law, we think this language from *Wallis* all but forecloses its application to these cases:

"Apart from the highly abstract nature of [the federal] interest, there has been no showing that state law is not adequate to achieve it." *Id.,* at 71.

We conclude that any federal interest in the outcome of the question before us "is far too speculative, far too remote a

---

[5] The Congress has considered, but not passed, a bill to provide for a federal cause of action arising out of aircraft disasters. See Hearings on S. 961 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, pt. 2, 91st Cong., 1st Sess. (1969).

possibility to justify the application of federal law to transactions essentially of local concern." *Parnell,* 352 U. S., at 33–34.

Although we have determined that Georgia law should be applied to the question raised by respondent's motion to dismiss, we shall not undertake to decide the correct outcome under Georgia law. The dissent to the panel opinion, in a footnote, stated that Georgia law would preclude petitioners from suing as third-party beneficiaries. The panel opinion, of course, held otherwise. We doubt that the Court of Appeals would deem itself bound by the dicta found in the footnote to the dissenting opinion which were simply later adopted by reference in the en banc majority opinion. We therefore vacate the judgment and remand to the Court of Appeals for consideration of the claim under applicable Georgia law.

### III

Petitioners have argued in this Court that the Airport and Airway Development Act of 1970 provides an implied civil right of action to recover for death or injury due to violation of the Act. 84 Stat. 219, as amended, 49 U. S. C. § 1701 *et seq.* (1970 ed. and Supp. V).[6] Petitioners, however, allege only diversity of citizenship as the basis for federal jurisdiction of their lawsuits; they do not rely upon federal-question jurisdiction, 28 U. S. C. § 1331, which would be more consistent with a theory of an implied federal cause of action under that Act. The complaints sought recovery solely on the grounds of negligence, nuisance, and breach of contract. There is no indication that petitioners alleged a violation of a federal statute and a right to recovery for such a violation. The fact

---

[6] In language similar to that used in the FAA grant agreements, §§ 1718 (3) and (4) require, as a condition precedent to approval of an airport development project, written assurances that the airport approaches will be safely maintained and that the use of land adjacent to the airport will be restricted to uses compatible with aircraft takeoff and landing.

that this asserted basis of liability is so obviously an afterthought may be some indication of its merit, but since it was neither pleaded, argued, nor briefed either in the District Court or in the Court of Appeals, we will not consider it. Cf. *Lawn* v. *United States*, 355 U. S. 339, 362–363, n. 16 (1958).

The judgment is vacated, and the cases are remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

Mr. Chief Justice Burger, concurring in the judgment.

There is language in the Court's opinion which might be misinterpreted as rigidly limiting the application of "federal common law" to only those situations where the rights and obligations of the Federal Government are at issue. I do not agree with such a restrictive approach.

I cannot read *Clearfield Trust Co.* v. *United States*, 318 U. S. 363 (1943), and *Bank of America Nat. Trust & Sav. Assn.* v. *Parnell*, 352 U. S. 29 (1956) as, in all circumstances, precluding the application of "federal common law" to all matters involving only the rights of private citizens. Certainly, in a diversity action, state substantive law should not be ousted on the basis of " 'an amorphous doctrine of national sovereignty' divorced from any specific constitutional or statutory provision and premised solely on the argument 'that every authorized activity of the United States represents an exercise of its governmental power.' " *United States* v. *Little Lake Misere Land Co.*, 412 U. S. 580, 592 n. 10 (1973), quoting *United States* v. *Burnison*, 339 U. S. 87, 91, and 92 (1950). However, I am not prepared to foreclose, at this point, the possibility that there may be situations where the rights and obligations of private parties are so dependent on a specific exercise of congressional regulatory power that "the Constitution or Acts of Congress 'require' otherwise than that state law govern of its own force."

*United States* v. *Little Lake Misere Land Co., supra,* at 592–593.

In such a situation, I would not read *Wallis* v. *Pan American Petroleum Corp.,* 384 U. S. 63, 68 (1966), to preclude a choice of "federal common law" simply because there is no specific federal legislation governing the particular transaction at issue. Once it has been determined that it would be inappropriate to apply state law and that federal law must govern, "the inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts." *United States* v. *Little Lake Misere Land Co., supra,* at 593. In short, although federal courts will be called upon to invoke it infrequently, there must be " 'federal judicial competence to declare the governing law in an area comprising issues substantially related to an established program of government operation.' " *Ibid.,* quoting Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. Pa. L. Rev. 797, 800 (1957).

Although in my view the issue is close, I conclude, on balance, that the cause of action asserted by the plaintiffs is not so intimately related to the purpose of the Airport and Airway Development Act of 1970, 84 Stat. 219, as amended, 49 U. S. C. § 1701 *et seq.* (1970 ed. and Supp. V), as to require the application of federal law in this case. See H. R. Rep. No. 91–601 (1969). Accordingly, the rule of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (1938), applies, and I join the judgment of the Court remanding the cases for a determination of the correct outcome under Georgia law.