# UNITED SERVICES AUTOMOBILE ASSOCIATION

v.

**GERMANTOWN SAVINGS BANK, Friends' Central School Corp., Arlene Smith, Charles Smith, and George J. O'Neill.**

### Civ. A. No. 78–64.

United States District Court,
E. D. Pennsylvania.

April 19, 1978.

Robert C. Steiger, Philadelphia, Pa., for plaintiff.

James Paul Dornberger, Philadelphia, Pa., for defendant Germantown Savings Bank.

Robert L. Archie, Jr., Philadelphia, Pa., for defendant Friends' Central School Corp.

Helen H. Cutner, Philadelphia, Pa., for defendant Arlene Smith.

No appearance for Charles Smith.

George J. O'Neill, pro se.

## MEMORANDUM OPINION

LUONGO, District Judge.

United Services Automobile Association, an insurance company, filed the complaint in this statutory interpleader action on January 9, 1978, and paid into the registry of this court $13,071.88, the sum admittedly owing under a policy it issued in 1975. It seeks a ruling as to which of the defendants is entitled to this fund. Friends' Central School Corporation, one of the defendants, seeks dismissal of the complaint on the ground of "inappropriateness." For the reasons hereafter stated, I conclude that the complaint should not be dismissed, and that defendant Germantown Savings Bank is entitled to the disputed fund.

*Motion to Dismiss*

Taking all the well-pleaded allegations of the complaint as true for the purposes of this motion, *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), the facts underlying this controversy may be summarized as follow. On June 30, 1975, United Services Automobile Association (hereafter Insurance Company) issued a homeowner's insurance policy bearing the number 0542890 90A. This policy covered the Philadelphia residence of Charles Smith and Arlene Smith, the "named insured," who at that time were husband and wife. On January 15, 1976, the Smith residence sustained water damage in the amount of $13,071.88, which Insurance Company agreed it owed to the Smiths. Complaint ¶ 9. However, three of the defendants in the instant proceeding brought separate actions affecting the insurance proceeds in state court, which ultimately led Insurance Company to seek relief by way of interpleader in federal court.

In one of these actions, George J. O'Neill, who prior to 1972 had been Arlene Smith's husband, sought, *inter alia*, (1) a declaration that he owned a one-half interest in the Smith residence, and (2) the appointment of a conservator to take possession of both the residence and the insurance proceeds derived from any damage thereto. O'Neill also informed Insurance Company that he would sue it as well if it paid the $13,071.88 to Arlene Smith without including him as a payee. Letter from Insurance Company's counsel, dated Feb. 28, 1978.

In a second action, originally instituted in October of 1974, Friends' Central School Corporation (hereafter School) obtained a default judgment against Arlene Smith and George O'Neill for $7,029.44, which sum apparently represented unpaid bills for the instruction of their four minor children. School then obtained a writ of execution, and served Insurance Company with a copy of the writ and with interrogatories in garnishment. *See generally* Pa.R.Civ.P. 3111, 3144–46, 3252. Based on Insurance Company's answers to the interrogatories, which unreservedly stated that it owed "Arlene

Smith, . . . along with her husband or former husband, Charles Smith," $13,071.88 under the homeowners' policy that covered their residence, the Court of Common Pleas of Montgomery County entered judgment for School against Insurance Company as garnishee on April 20, 1977. Garnishee's Answers, ¶ 5, Exhibit B to Answer and Counterclaim of Friends' Central School Corp. (Document No. 6). *See generally* Pa.R.Civ.P. 3146(b).

Germantown Savings Bank (hereafter Bank), the mortgagee of the Smith residence, brought the third state court action after Arlene Smith and Charles Smith apparently defaulted on their mortgage. Bank obtained a default judgment against Charles Smith on August 11, 1976, and it obtained judgment on the pleadings against Arlene Smith on October 28, 1976. Both judgments were entered in the Court of Common Pleas of Philadelphia County, and were in the amount of $41,325.16. Although the Smith residence was sold for $61,200 at a sheriff's sale on December 6, 1976, the proceeds of that sale have not yet been distributed. Bank's judgments thus remain unsatisfied.

Uncertain as to its obligations, Insurance Company brought this interpleader action to resolve the various claims. Jurisdiction over this action is conferred by 28 U.S.C. § 1335(a) (1970), as at least two of the claimants are of diverse citizenship. Venue in this district is proper under 28 U.S.C. § 1397 (1970). School, however, emphasizing the equitable nature of interpleader jurisdiction, argues that Insurance Company should not be afforded the benefits of that procedure.

School contends initially that Insurance Company has only itself to blame for its present predicament. The argument runs as follows:

"The loss occurred in January of 1976. Plaintiff was required under its policy to pay the insured or if the insured failed to render proof of loss, then the mortgagee was to be paid within sixty days after it rendered proof of loss. Plaintiff has retained possession of the insurance proceeds for two years notwithstanding the submission of proof of loss by Defendant, Arlene Smith.

Plaintiff has only now after a judgment has been entered against it, sought to consolidate the claims. Thus, it has chosen to retain possession of the funds knowing they were subject to competing claims. It has created its own quandry and could have feasibly got itself out of it by following the terms of its policy." Brief in Support of Motion to Dismiss (Document No. 18) at 3.

To begin with, School's recitation of the facts underlying this action is somewhat misleading. Although the loss occurred in January of 1976, Arlene Smith apparently did not file formal proof of loss until December 6, 1976. Answer of Arlene Smith ¶ 26. The 60-day payment clause that School refers to requires Insurance Company to pay benefits "sixty days after proof of loss . . . is received by [Insurance Company]." Policy No. 0542890 90A, p. 2, lines 150–56. Moreover, Insurance Company apparently was served with a writ of execution and with School's interrogatories in garnishment on January 31, 1977. Answer and Counterclaim of Friends' Central School Corp. ¶ 26. From that day forward, of course, Insurance Company was enjoined from paying Arlene Smith the full amount that she claimed. *See* Pa.R.Civ.P. 3111(c), (d), 3252; *cf. Helms v. Chandler,* 423 Pa. 77, 80, 223 A.2d 30, 31 (1966) ("Service of the writ of execution under Rule 3111 constitutes the attachment."). In addition, as noted earlier, judgment was entered on April 20, 1977 for School and against Insurance Company as garnishee in the amount of $7,029.44. In short, School's contention that Insurance Company "retained possession of the insurance proceeds for two years notwithstanding the submission of proof of loss" is inaccurate.

█ I hasten to add, however, that Insurance Company's carelessness in answering School's interrogatories in garnishment unquestionably produced the quandry in which Insurance Company now finds itself. If it had filed an answer stating that, although

Arlene and Charles Smith were the named insured, their claims to the proceeds were subject to the prior claim of Bank as mortgagee, then, presumably, the Court of Common Pleas of Montgomery County would not have entered judgment in garnishment against Insurance Company, and School would have had no claim to the proceeds of the policy that covered the Smith's residence. Thus, Insurance Company created its present predicament by filing answers unreservedly (and incorrectly) admitting that it owed Charles and Arlene Smith the sum of $13,071.88. As I view the matter, however, this is not a sufficient basis for denying Insurance Company the equitable remedy of interpleader. I note in particular that School does not contend that it has been prejudiced by Insurance Company's carelessness; indeed, had it not been for that carelessness, School would not have obtained the garnishment judgment on which its only claim to the insurance proceeds is based.

School's second argument for dismissal of the complaint is also based on the equitable nature of interpleader jurisdiction. That argument, as stated in School's brief, is as follows: "When an earlier state court proceeding has obtained both subject matter and personal jurisdiction over all concerned and can thus provide complete relief, interpleader is unnecessary." Brief in Support of Motion to Dismiss (Document No. 18) at 4. School's brief, however, only underscores what is readily apparent from the factual summary set out earlier: no single state court proceeding will afford "complete relief" *to Insurance Company.* School makes much of *Bank*'s ability to secure relief in the Court of Common Pleas of Philadelphia County, but I fail to see how Bank's good fortune in this regard can justify denying Insurance Company the remedy it seeks in this court. Underlying School's argument, perhaps, is an awareness that Bank could satisfy its judgment against Arlene Smith from the foreclosure proceeds rather than from the insurance proceeds, and that the former course of action would be preferable from School's point of view. Considerations such as these, however, can properly play no part in denying Insurance Company the interpleader remedy it seeks.

School's third, and final, argument is that "[w]hen the interpleader proceeding will only be able to control a small portion of the disputes arising out of a particular situation, it will not be able to achieve much as a means of consolidating numerous elements of that dispute into one court at one time." Brief in Support of Motion to Dismiss (Document No. 18) at 6. Whatever force this reasoning may have in a case where the plaintiff and the various claimants are involved in several lawsuits independent of the interpleader action, *National Surety Corp. v. Globe Indem. Co.,* 331 F.Supp. 208, 210–11 (E.D.Pa.1971), it has little force indeed where, as here, the proposed interpleader would at least resolve the plaintiff's disputes with the various defendants. That some of the defendants might then go on to litigate other controversies among themselves is no reason to prevent the interpleader plaintiff from avoiding that imbroglio. Accordingly, School's motion to dismiss the complaint will be denied.

Before turning to the merits of the various claimants' contentions regarding the interpleader fund, I am constrained to point out that Charles Smith may, at some later date, be in a position to attack the final order in this case insofar as it applies to him. The record in this case includes the copies of the summons and complaint that were sent by registered mail to Charles Smith at a Washington, D.C. address and were subsequently returned to the clerk of this court as "unclaimed." Charles Smith has filed no pleadings in this action, and he did not appear at the oral argument held on February 13, 1978. Arlene Smith, his former wife, has represented to the court that Charles Smith long ago assigned to her his interest in the premises covered by the insurance policy. Answer of Arlene Smith ¶ 36. If in fact Charles Smith retained no interest in the premises, the question whether he was properly served with proc-

ess in this action will be largely academic. In any event, defective service of process, unlike the absence of subject-matter jurisdiction, is not a matter to be raised by a district court *sua sponte*. *See* Fed.R.Civ.P. 12(b), (h) (by implication). I merely point out for the record that this action has proceeded in Charles Smith's absence.

### The Merits

 On the merits of this action, Bank, as mortgagee of the insured premises, unquestionably is entitled to the proceeds of USAA Policy No. 0542890 90A. The policy contains a mortgagee clause applicable to coverage of the homeowner's dwelling, and that clause provides:

> "Loss, if any, under this policy, shall be payable to the mortgagee . . . named on the first page of this policy . . . "

> Page 3 HO–3, "Additional Conditions," ¶ 4.

Bank is named as mortgagee on the first page of the policy. Moreover, it clearly appears that the proceeds under this policy ($13,071.88) do not exceed Bank's interest in the premises as mortgagee ($41,325.16).

Neither School nor George O'Neill disputes Bank's entitlement to the interpleaded fund. Arlene Smith, however takes the position that she alone is entitled to that fund. In support of this contention, she advances two arguments.

First, she relies on the policy's "loss payable clause," which applies to coverage of the homeowner's dwelling. That clause reads as follows: "Loss, if any, shall be adjusted with the Named Insured and shall be payable to him unless other payee is specifically named hereunder." Page 4, "Conditions Applicable Only to Section I," ¶ 7. This provision does not aid Arlene Smith's position, however, for in the mortgagee clause quoted earlier, another payee is "specifically named." That payee, of course, is Bank, the mortgagee.

Arlene Smith also points out that she alone filed formal proof of loss with Insurance Company, and she argues that

Bank, having failed to file proof of loss, may not collect the proceeds under this policy. I cannot accept this interpretation. The policy requires the mortgagee to file proof of loss only *where the named insured has failed to do so*. Page 2, lines 74–78. This clause, evidently aimed at providing the insurer with notice of claims against it, cannot sensibly be read as requiring the mortgagee to file a second, presumably redundant, proof of loss after the named insured has already filed one. *Cf. Pennsylvania Co. for Ins. v. Pachen & Munich Fire Ins. Co.*, 257 F. 189, 194 (E.D.Pa.1919) (assignee of mortgagee entitled to rely on proof of loss filed by insured beyond 60-day period applicable to insured but within additional time period allowed for mortgagee to file proof of loss). Had Insurance Company, for whatever reason, desired to receive separate proof of loss from the mortgagee in a case such as this, it could easily have drafted the policy to expressly require such action on the mortgagee's part. In the absence of an express requirement, however, I will not stretch the words of the policy to imply one. Thus, Bank, rather than Arlene Smith, is entitled to the interpleaded insurance proceeds.