**UNITED STATES of America, Plaintiff,**

v.

**$288,930.00 IN U.S. CURRENCY, Defendant,**

v.

**FU JUNG TAN, Claimant.**

**No. 92 C 6737.**

United States District Court, N.D. Illinois, E.D.

Dec. 2, 1993.

**368**

Madeleine Sullivan Murphy, Ramune Rita Kelecius, U.S. Attorney's Office, Chicago, IL, for U.S.

Stephen M. Komie, Komie & Associates, Chicago, IL, Garrick S. Lew, Minami, Lew, Tamaki & Lee, San Francisco, CA, for claimant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

The United States filed a complaint for forfeiture against defendant $288,930.00 in United States currency alleging that the currency constituted proceeds of narcotics trafficking and thus is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).[1] The sole claimant to defendant currency is Fu Jung Tan ("claimant Tan"). Claimant Tan has moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a valid claim upon which relief may be granted. For the reasons stated below, claimant's motion is denied.

## BACKGROUND

The government alleges in its verified complaint that the following events occurred prior to its seizure of the defendant currency. During the course of an ongoing investigation into narcotics trafficking through Chicago's Union Station, an Amtrak employee approached two Chicago Police Department Drug Task Force agents and notified them that he had unloaded a gray Samsonite Oyster hardsided suitcase for passenger in a sleeper car on Amtrack train # 49 from New York City to Chicago. The Amtrak employee advised the agents that the suitcase "was very heavy and appeared to have something other than clothing inside."[2] The government contends that the task force agents were aware that this particular piece of luggage is commonly used by narcotics couriers because of its gasket seal.

---

**1.** This section provides for the forfeiture of:
(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter ...
21 U.S.C. § 881(a)(6).

**2.** *Verified Complaint,* ¶ 5.

Based on this information, the government alleges that the agents approached the passenger, later identified as Fu Jung Tan, identified themselves as police officers, and asked if they could speak to him. Tan allegedly agreed. The agents then asked if they could see Tan's identification and a copy of his train ticket and Tan allegedly agreed. An examination of the ticket revealed that it was a one way ticket with sleeper car accommodations from New York City to San Francisco purchased with cash. Tan was then asked if he was traveling on business or vacation. Tan stated that he was visiting his cousin in San Francisco and that he was from Hong Kong.

The agents then asked questions about Tan's luggage including the Samsonite Oyster suitcase. Tan allegedly said that he was not carrying any packages for anyone else; he packed his own luggage; he was not carrying any packages of which he did not know the contents; and that he was not carrying any large amounts of currency. The government alleges that the agents then asked Tan if he would consent to the search of his luggage, and Tan responded that the officers could search his luggage.

Upon opening the Samsonite Oyster suitcase, the agents found a locked, large, green gym bag. The agents allegedly asked Tan what was in the bag and Tan responded that it was money that his uncle, Peter Wong, gave him. The agents asked how much money was in the bag and Tan allegedly responded that the bag contained about $290,000.00, probably from his uncle's gambling and that his uncle was trying to send the money to Hong Kong without paying taxes on it.

When questioned about his uncle (what he did for a living, his phone number, where he lived) Tan allegedly stated that Peter Wong was not really his uncle; that he met Wong for the first time one week ago; and that Wong asked him to take the currency to a man named Wilson Wong in California in exchange for a payment of $15,000. When asked if Peter Wong was involved in narcotics, Tan allegedly said that he did not know.

The agents then asked if he would open the lock on the gym bag and Tan allegedly consented. The bag contained $288,930.00 in five, ten, and twenty dollar denominations, separated and bundled. After the money was counted, the government alleges that there was a positive alert by a certified narcotic detective dog for the presence of narcotics on the money.

Based on the above allegations, the government contends that there is probable cause to believe that the defendant currency was furnished or intended to be furnished in exchange for a controlled substance, was proceeds of such an exchange, or was used or intended to be used to facilitate a violation of Title 21 of the United States Code.

## ANALYSIS

■ In ruling on a motion for dismissal, the court must presume all of the well-pleaded allegations of the complaint to be true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). In addition, the court must view those allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ In support of his motion to dismiss, claimant Tan argues, based on the United States Supreme Court's recent decision regarding civil forfeitures in *Austin v. United States*, — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), that the government's complaint in this case should be dismissed because the complaint fails to allege any criminal act that is the basis of the forfeiture and the seizure of claimant's property was excessive as compared to the criminal act allegedly performed by claimant. Claimant Tan argues that after the Supreme Court's decision in *Austin*, "it is now clear that the government must show a nexus between the property seized and actual criminal activity in order to justify seizing the property," and that the seizure shall not be excessive as

compared to the criminal act performed by the claimant.[3]

The government responds by arguing that the *Austin* decision does not apply to the forfeiture at issue in this case, which is based on 21 U.S.C. § 881(a)(6), because the Supreme Court limited its decision to forfeitures based on 21 U.S.C. § 881(a)(4) and (a)(7). The government argues that the Supreme Court's reasoning regarding *in rem* civil forfeitures of legitimate property, alleged to have facilitated criminal drug activity, does not apply to this case because this case involves a forfeiture of the alleged proceeds of unlawful activity.[4]

In *Austin,* the Supreme Court held that the Excessive Fines Clause of the Eighth Amendment[5] applies to forfeitures of property under 21 U.S.C. §§ 881(a)(4) and (a)(7) because these types of forfeitures serve, at least in part, to punish and to deter the owner. 113 S.Ct. at 2810–11. The Court's decision to apply the Eighth Amendment to § 881(a)(4) and (a)(7) forfeitures was based on the punitive nature of these provisions. The Court stated that in order for the Eighth Amendment to apply, the Court must determine that the forfeiture in part serves to punish the claimant. *Austin,* —— U.S. at ——, 113 S.Ct. at 2806.

The Court in *Austin* rejected the government's argument that the Eighth Amendment should not apply because § 881(a)(4) and (a)(7) are remedial in nature. *Id.* at ——, 113 S.Ct. at 2811. The Court stated that these forfeiture provisions were not remedial in nature because there was nothing criminal in possessing the properties subject to the forfeitures and these properties were not instruments of the drug trade. *Id.*

Although the Supreme Court decided in *Austin* that the Eighth Amendment applies to forfeitures made pursuant to §§ 881(a)(4) and (a)(7), the Court declined to establish a test for determining whether a forfeiture is constitutionally "excessive" in violation of the Eighth Amendment. *Id.* at ——, 113 S.Ct. at 2812. The Court stated, "Prudence dictates that we allow the lower courts to consider that question in the first instance." *Id.*[6]

This court finds the government's arguments regarding the inapplicability of the Supreme Court's holding in *Austin* to the forfeiture in this case persuasive because the forfeiture of the proceeds from an alleged drug transaction based on § 881(a)(6) seems to be remedial, rather than punitive, in nature. Unlike the property seized in *Austin,* which the claimant legally possessed, the property seized in this case is alleged to have been illegally acquired and possessed.

The word "punishment" is defined as "a deprivation of property or some right." Black's Law Dictionary 1234 (6th ed. 1990). The forfeiture of legitimately owned property in *Austin* was a punishment because the claimant was deprived of the rights that the claimant had in the property. In this case, the forfeiture of allegedly illegally obtained property is not a punishment because the claimant does not rightfully own the forfeited property.

█ Even if the Supreme Court's holding in *Austin* applies to the forfeiture in this case, the Eighth Amendment was not violated. Although the Supreme Court in *Austin* declined to establish a test for determining whether a forfeiture is excessive in violation

---

**3.** *Memorandum in Support of Claimant's Motion to Dismiss,* p. 3.

**4.** The government contends that forfeitures based on §§ 881(a)(4) and (a)(7) are distinguishable from forfeitures based on § 881(a)(6) because §§ 881(a)(4) and (a)(7) authorize the forfeiture of otherwise legitimate property that has become tainted by virtue of someone's use of the property for criminal activity, while § 881(a)(6) authorizes the forfeiture of property that is in itself proceeds of a criminal activity. *See United States' Response to Claimant Tan's Motion to Dismiss,* p. 4.

**5.** The Eighth Amendment states that "Excessive bail shall not be required, nor excessive fines

imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

**6.** The majority did, however, comment on the test for excessiveness articulated by Justice Scalia in his concurring opinion stating, "We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive." *Austin,* —— U.S. at ——, 113 S.Ct. at 2812 n. 15.

of the Eighth Amendment, the Seventh Circuit has addressed this issue in *United States v. Certain Real Property,* 943 F.2d 721 (7th Cir.1991) and in *United States v. Vriner,* 921 F.2d 710 (7th Cir.1991).

In both cases the Seventh Circuit required the claimant to prove disproportionality between the forfeiture and the offense committed to successfully prove a violation of the Eighth Amendment. The Seventh Circuit stated that in forfeiture cases the Eighth Amendment "forbids only those penalties that are grossly disproportionate to the offense committed." *Vriner,* 921 F.2d at 712.

In this case, the government alleges that it has probable cause to believe that all of the seized currency was furnished or intended to be furnished in exchange for a controlled substance, was proceeds of such an exchange, or was used or intended to be used to facilitate a violation of the criminal drug laws set forth in Title 21 of the United States Code. The government contends it did not seize any property of the claimant that, according to the government, was not connected to drug activity. Accepting the government's allegations as true as the court must on a motion to dismiss, *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), this court must find that the forfeiture sought by the government is not "grossly disproportionate" to the underlying criminal act alleged by the government as the basis for the forfeiture. The government alleges that the claimant obtained the entire forfeited property directly from an illegal drug transaction. There could not be a more direct nexus between the alleged criminal activity and the forfeiture.

### CONCLUSION

For the reasons stated above, claimant Tan's motion to dismiss the government's complaint is DENIED. The parties are strongly urged to discuss settlement of this case and report on the status thereof on December 10, 1993 at 10 a.m. The previously scheduled hearing set for Monday December 13, 1993 at 10:30 a.m. stands.