**Betty LIVINGSTON, Plaintiff,**

v.

**The Honorable Zoro J. GUICE, Jr., in his official capacity; State of North Carolina, Defendants.**

### No. 5:92CV131–MU.

United States District Court,
W.D. North Carolina,
Statesville Division.

June 15, 1994.

John W. Gresham, Ferguson Stein Wallas Adkins Gresham & Sumter, Charlotte, NC, William G. Simpson, Jr., N.C.Civ. Liberties Union, Legal Foundation, Raleigh, NC, Adam Stein, Ferguson Stein Wallas Adkins Gresham & Sumter, Chapel Hill, NC, for plaintiff.

Lars F. Nance, N.C. Dept. of Justice, Raleigh, NC, for defendants.

Clifford C. Marshall, Asst. U.S. Atty., U.S. Attorney's Office, Asheville, NC, Mary Lou Mobley, U.S. Dept. of Justice, Civ. Rights Div., Public Access Section, Washington, DC, for amicus curiae U.S.

### ORDER

MULLEN, District Judge.

**THIS MATTER** comes to the court upon Defendants' Motion to Dismiss pursuant to

Rule 12(b) of the Federal Rules of Civil Procedure, filed January 11, 1993. Plaintiff brought this action under Title II of the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 1983,[1] alleging actions by Defendant while under color of office as Senior Resident Judge of the 29th Judicial District of the State of North Carolina. She also brought claims based on North Carolina law pursuant to this court's pendent jurisdiction. Plaintiff seeks declaratory and injunctive relief from Defendant Guice ("Judge Guice") and damages from Defendant State of North Carolina.

In determining whether to grant dismissal under Rule 12(b)(6), this court must presume all factual allegations of the complaint to be true, and all reasonable inferences must be made in favor of the non-moving party. *Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977).

### Factual Allegations

The alleged incidents occurred in the Caldwell County Courthouse, while court was in session. Plaintiff, Betty Livingston, suffers from multiple sclerosis and, as a result, is confined to a wheelchair. In May 1992 she attended the criminal trial of her nephew, Timothy Barlowe, who was before the court on a murder charge. For the first few days of the trial, Plaintiff had gained access to the courtroom using a door that entered inside the bar, next to the bench and to the right of the judge.[2] After several conflicts with the Plaintiff and other members of Barlowe's family over the use of the door, and immediately following one when a family member allegedly became ill during testimony and was escorted by other family members through the bar and out the side door, Judge Guice ordered that, "Nobody but nobody goes through this door and into this area except court personnel...." Plaintiff claims that this order was targeted directly at her.

Defendant Guice recessed court and left the courtroom. Plaintiff was concerned how she was to leave the courtroom. William C. Palmer, the lawyer representing Mr. Barlowe, told Plaintiff's sister-in-law to take Plaintiff out quickly and down the hall. Plaintiff alleges that before she was able to get out of the courtroom, she urinated on herself. Plaintiff further alleges that, because of the judge's order and as a result of these incidents, she was effectively barred from the trial. She states that she was not aware at the time of the trial that the courtroom had another door wide enough to accommodate her wheelchair. Although entry through the jury pool room provided access to the courtroom for the handicapped, Plaintiff alleges that the door Judge Guice ordered to be used only by court personnel provided the "most convenient" means of access for an individual in a wheelchair who planned to sit at counsel's table.[3] Plaintiff further alleges, upon information and belief, that Judge Guice was not aware that the jury pool room provided access for Plaintiff.

### Legal Analysis

The Supreme Court recognized the doctrine of judicial immunity as early as 1869, when the Court noted that judges are not responsible "to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation, unless perhaps where the acts are palpably in excess of the jurisdiction of the judges ..." *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). [quoting *Randall v. Brigham,* 7 Wall. 523, 19 L.Ed. 285 (1869)]. The Fourth Circuit has stated that "[t]he law has been settled for centuries that a judge may not be attacked for exercising his judicial authority, even if done improperly." *Mullins v. Oakley,* 437 F.2d 1217 (4th Cir.1971). A judge will not be deprived

---

1. Plaintiff later dismissed her 42 U.S.C. § 1983 claim for damages against the State of North Carolina.

2. This door is customarily used only by the judge and court personnel. Judge Guice had previously told Plaintiff and members of her family that "... no one was to use this door," or words to that effect.

3. This court is somewhat puzzled by this allegation. The complaint states that this door "provides the most convenient and least disruptive means of access for an individual in a wheelchair who plans to sit at counsel's table [during her nephew's murder trial]." Even assuming this is true, this court fails to see how this allegation states a claim upon which relief could be granted; as a non-party to the trial, Plaintiff had no right to sit at counsel's table.

of immunity, even when the action taken was in error, was done maliciously, or was in excess of his authority. 435 U.S. at 357, 98 S.Ct. at 1105. Furthermore, a judge will be subject to civil liability only when he has acted in the "clear absence of all jurisdiction." 435 U.S. at 358, 98 S.Ct. at 1105. [quoting *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646 (1872) ].

In passing the ADA, Congress noted that "some 43,000,000 Americans have one or more physical or mental disabilities." 42 U.S.C. § 12101(a)(1). Congress also stated that discrimination against individuals with disabilities continues to be a serious and pervasive social problem. 42 U.S.C. § 12101(a)(2). Although this court is highly sympathetic toward the Plaintiff's situation, it simply cannot agree that Judge Guice acted in "clear absence of all jurisdiction." Judge Guice's actions, although presumably improper for Rule 12(b)(6) analysis, were well within the scope of his judicial powers, as defined by both state statute and American Bar Association standards. North Carolina law provides that the "presiding judge may impose reasonable limitations on access to the courtroom when necessary to ensure the orderliness of the courtroom proceedings or the safety of persons present." N.C.Gen. Stat. § 15A–1034. The American Bar Association standards also give trial judges similar discretion to control their courtroom. *See* ABA Standards, Function of the Trial Judge §§ 7.1 to 7.5. Whether one agrees with the particular instructions issued by Judge Guice to maintain order in his court, it is obvious that his actions were not taken in "clear absence of all jurisdiction" and must be construed as judicial acts. ·The Supreme Court made it quite clear that any acts performed by a judge in his "judicial capacity" or during a "judicial proceeding" are absolutely immune from civil liability. 435 U.S. at 361, 98 S.Ct. at 1107. However abhorrent one might view Judge Guice's actions as alleged, this court is of the opinion that Guice performed a "judicial act" when he restricted use of the intra-bar door to only court personnel, and that this was in relation to matters over which there was not "a clear absence of jurisdiction over the subject-matter." Defendant Guice is thus clothed with judicial immunity, and all Plaintiff's claims against him will be dismissed for failure to state a claim upon which relief can be granted pursuant to F.R.Civ.P. 12(b)(6).

Plaintiff's remaining claim is against the State of North Carolina, from which she seeks compensatory damages. This claim must also be dismissed for failure to state a claim upon which relief can be granted, pursuant to F.R.Civ.P. 12(b)(6). Plaintiff failed to allege even a single independent act or duty to act by the State of North Carolina. Plaintiff has not alleged that the State has any ability to control the Caldwell *County* Courthouse (emphasis added).[4] Although the Plaintiff alleges that the acts of Judge Guice are the acts of the State and thereby create liability, her claim nevertheless fails. As noted, *supra,* the Supreme Court has consistently stated that any acts performed by a judge in his "judicial capacity" or during a "judicial proceeding" are *absolutely immune* from civil liability. 435 U.S. at 361, 98 S.Ct. at 1107 [emphasis added]. The Fifth Circuit has recognized that "[i]mplicit in the grant of absolute immunity is the recognition that the victim of an abuse of office may receive no recompense for the injury done." *Austin Mun. Securities, Inc. v. Nat. Ass'n of Securities Dealers, Inc.,* 757 F.2d 676, 687 (5th Cir.1985). Judge Learned Hand stated in *Gregoire v. Biddle,* 177 F.2d 579, 581 (2nd Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950):

The justification for doing so [granting judicial immunity] is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties ... As is so often the case, the answer must be

4. It would seem that the Plaintiff might have a colorable claim against Caldwell County, if the courthouse did not provide equal access for disabled individuals. But in the State of North Carolina, "courtrooms and related judicial facili-ties ... shall be provided by the county." N.C.Gen.Stat. § 7A–302. Plaintiff has not alleged that the State has any ability to control either the maintenance of the county courthouse or access to this county facility.

found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

Although the Plaintiff might not be compensated for the alleged injury she suffered at the hands of Judge Guice, this result is the "balance between evils" that the Supreme Court has chosen. It utterly defies rationality to hold the State financially responsible for acts taken by one of its officials when that official is absolutely immune. To hold otherwise would subject the trial judge to all of the intrusion into his office, but for damages, that the rule avoids. As the Complaint fails to allege any independent actions of the State of North Carolina which might create any civil liability and, further, fails to allege any doctrine through which the State may be held liable for the absolutely immune acts of one of its judges, the Complaint fails to state a claim upon which relief can be granted and is dismissed pursuant to Rule 12(b)(6).[5]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss is **GRANTED.** The case is **DISMISSED.**

---

**5.** In light of this disposition, the court finds it unnecessary to address the possible grounds for dismissal based on eleventh amendment immuni-

ty, damages for private rights of action under the ADA and agency review.