**Jamaal W. ALLAH; Lennie Kirkland; Kevin Jackson, Plaintiffs,**

v.

**Devon BROWN, Commissioner of the New Jersey State Department of Corrections; Terrance Moore, Administrator of East Jersey State Prison; Roy Hendricks, Administrator of New Jersey State Prison; Robert Shabbick; Wayne Sanderson, Defendants.**

**No. CIV. 02–5298(WHW).**

United States District Court, D. New Jersey.

Oct. 26, 2004.

Lawrence S. Lustberg, Shavar D. Jeffries, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for Plaintiffs.

Peter C. Harvey, Office of the Attorney General, Department of Law and Public Safety, Trenton, NJ, for Defendants.

### OPINION

WALLS, District Judge.

This matter is before the Court on Plaintiffs' motion for judgment on the pleadings and Defendants' cross-motion for judgment on the pleadings. The motions are decided without oral argument pursuant to Fed.R Civ.P. 78. Plaintiffs' motion is granted in part and denied in part; Defendants' motion is granted in part and denied in part.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiffs are three inmates in New Jersey state prisons who allege that Defendants are responsible for adopting a policy that directed prison officials to open inmates' legal mail outside of their presence in violation of their constitutional rights.

Before September 11, 2001, the policy of the New Jersey Department of Corrections ("DOC") required that legal mail be opened only in an inmate's presence. After the terrorist attacks of September 11, 2001, the then Acting Governor of the State of New Jersey, Donald DiFrancesco, issued Executive Order No. 131–2001, which authorized New Jersey agencies to suspend or modify existing rules to the extent they jeopardized public welfare. Pursuant to this order, the DOC amended its procedures regarding the handling of incoming mail and issued a policy directive on October 19, 2001 (the "Legal Mail Policy") requiring that all incoming legal mail be opened outside of the prisoners' presence and checked for contraband and anthrax contamination. Legal mail is now sorted and opened on prison grounds, but not within the inmates' housing units.

Plaintiffs filed a *pro se* complaint on November 4, 2002 against various State officials, seeking, *inter alia,* an injunction to prevent enforcement of the Legal Mail Policy. On April 3, 2003, this Court dismissed with prejudice Plaintiffs' damages claims against the State officials in their official capacities and dismissed without

prejudice Plaintiffs' claim of a denial of access to the Courts. The Court permitted Plaintiffs' free speech and association claims to proceed against the State officials. Plaintiffs filed an Amended Complaint on June 3, 2003. Defendants filed a Second Amended Answer to Plaintiffs' Amended Complaint on July 29, 2003. Plaintiffs now move for judgment on the pleadings under Fed.R.Civ.P. 12(c) with respect to Count I of their Amended Complaint, asserting that the Legal Mail Policy violates their fundamental rights to free speech and association under the United States Constitution. Defendants filed a cross-motion for judgment on the pleadings.

## STANDARD OF REVIEW

The Court reviews a motion for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c) under the same standard as a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). *See Constitution Bank v. DiMarco*, 815 F.Supp. 154, 157 (E.D.Pa. 1993). On a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir.1994). Under Rule 12(c), judgement will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *See Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir.1988). The question is whether the plaintiff can prove any set of facts consistent with his allegations that will entitle him to relief, not whether he will ultimately prevail. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or permit inferences to be drawn that these elements exist. *See* Fed. R.Civ.P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### I. *Violation of Plaintiffs' Constitutional Rights*

■ The Supreme Court has long held that despite the necessary loss of liberty that results from incarceration, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). A prison regulation that impinges on an inmate's constitutional rights will not be upheld unless it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S.Ct. 2254. However, the courts must give substantial deference to the judgment of prison administrators, who "bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

The specific contours of prisoners' First Amendment rights to free speech and association have not been established. The

Supreme Court has upheld a regulation that permitted clearly-marked legal mail to be opened and inspected for contraband, but not read, in the presence of the addressee prisoner. *See Wolff v. McDonnell,* 418 U.S. 539, 577, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The Supreme Court has not addressed the corollary question of whether a regulation permitting opening and inspecting of legal mail outside of the addressee prisoner's presence is constitutional.

Before the Legal Mail Policy was enacted, the Third Circuit Court of Appeals held that "a pattern and practice of opening [a prisoner's] properly marked incoming court mail outside his presence impinges upon his constitutional rights to free speech and court access. Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." *Bieregu v. Reno,* 59 F.3d 1445, 1456 (3d Cir.1995), *overruling on other grounds* recognized in *Oliver v. Fauver,* 118 F.3d 175, 177–78 (3d Cir.1997). After concluding that this practice violated the plaintiff's constitutional rights, the *Bieregu* court applied the four-prong test established in *Turner v. Safley* to determine whether such a policy "is reasonably related to legitimate penological interests." *Bieregu,* 59 F.3d at 1457 (citing *Turner v. Safley,* 482 U.S. 78, 79, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

The *Turner* test directs the courts to consider the following factors when deciding if a prison policy is constitutional: (1) whether there is a "valid, rational connection" between the infringing practice and a valid government interest; (2) whether there are "alternative means of exercise of the right" that are available to inmates; (3) the effect the accommodation will have on prison officials, other inmates and the allocation of prison resources; and (4) the existence of an alternative that accommodates the prisoner's rights at "*de minimis* cost to valid penological interests." *Turner,* 482 U.S. 78 at 89–91, 107 S.Ct. 2254, 96 L.Ed.2d 64.

In the Third Circuit it is clear that as a general matter, prisoners have a constitutional right to be present when their legal mail is opened. Defendants now ask the Court to determine whether the *Turner* standard requires their presence in the context of today's heightened terrorism concerns, and more specifically, the threat of anthrax contamination through the mail.

Plaintiffs contend that the Legal Mail Policy is reasonably related to the DOC's legitimate interest in maintaining prison safety and security. The policy was issued in the wake of the terrorist attacks of September 11, 2001, pursuant to an executive order authorizing state agencies to modify existing rules to the extent they jeopardized public welfare. Plaintiffs argue that the Legal Mail Policy was enacted in response to a "very real" threat of anthrax contamination through mail to prisoners, citing as evidence the letters containing anthrax that were processed in the Hamilton, New Jersey mail processing centers. *See,* David Kocieniewski, *Hamilton: Anthrax Cleanup to Last until 2004,* N.Y. Times, August 8, 2003 at B5.

This Court finds that there is no reasonable connection between the Legal Mail Policy and the Defendants' asserted interest. Defendants have offered no evidence that there is an elevated risk of anthrax contamination in prisons resulting from the events of September 11, 2001, which prompted DiFrancesco's executive order. Nor have Defendants cited any evidence of attempts to expose prisoners to anthrax in the three years since the incident in the Hamilton postal facility. Since that time, investigations conducted by the Center for

Disease Control and Prevention (the "CDC") have found that the actual risk of anthrax contamination in this country is quite small, and guidelines set forth by the CDC and the State of New Jersey provide a sensible approach to dealing with suspicious packages. *See CDC Health Advisory: Updated Information About How to Recognize and Handle a Suspicious Package or Envelope* (November 2003), *available at* <htt p://www.bt.cdc.gov/agent/anthrax/mail/suspiciouspackages.asp>.

In addition, a policy requiring the inmates' presence while their legal mail is opened does not significantly increase the risk that third-parties would be susceptible to anthrax contamination. The only additional person protected from exposure by the Legal Mail Policy is the inmate himself, who is at liberty to waive his first amendment right to be present. A policy requiring that legal mail be opened in an enclosed area would be reasonable, and a policy providing that any suspicious letters marked as legal mail be opened outside of the inmates' presence might also be appropriate. However, a policy expressly directing that all of the inmates' legal mail be opened and inspected outside of their presence impermissibly "overreaches" Defendants' legitimate interest in maintaining prison safety and security.

Defendants concede that are no alternative means for inmates to exercise their right to freely communicate with attorneys and the courts, but argue that the Legal Mail Policy is only a "minor burden" on Plaintiffs' rights, which are protected when prison officials refrain from reading inmates' legal mail. Moreover, Defendants argue the burden on the prison that would result from accommodating Plaintiffs' rights is too onerous.

It is no doubt true that "reading [inmates'] legal mail would infringe the right of access even more than simply opening and inspecting it." *Bieregu*, 59 F.3d at 1456. However, as the Supreme Court noted in *Wolff v. McDonnell,* the only way to ensure that inmates' legal mail is not read is to require that it be opened in their presence. 418 U.S. 539, 576–77, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Plaintiffs' allegations, whether true or not, certainly indicate that Plaintiffs are under the impression that their legal mail *is* being read by prison officials. This is precisely the chilling effected that the Third Circuit warned about in *Bieregu*. A pattern and practice of opening an inmate's legal mail outside of his presence could have a significant effect on an inmate's ability to freely communicate with his attorney and the courts, and cannot be considered a "minor burden" on his First Amendment rights.

Defendants have not shown how accommodating Plaintiffs' rights would prove overly burdensome. Legal mail is currently opened in an on-site facility that is located on prison grounds but outside of the prison walls. Defendants argue that allowing the prisoners to view the opening of their legal mail in this on-site facility would be a "logistical nightmare" because thousands of prisoners would have to be transported and searched at least once in order to gain entrance to the mail facility. However, there are surely other mail processing procedures that would accommodate Plaintiffs' rights and impose less of a burden on prison administration. Legal mail could be distributed and opened in an enclosed space within the prison walls, which would obviate the need for cumbersome inmate transfer. Or, as Plaintiffs suggest, a windowed room within the prison walls could be used for inspection of legal mail, which would allow inmates to observe the opening of their letters with no risk of anthrax exposure. Given the importance of the rights at issue in this case, the inconvenience associated with opening legal mail in

the presence of the inmate addressees do not outweigh Plaintiffs' First Amendment rights to freely communicate with their attorneys and the courts. Accordingly it is ordered that Defendants immediately cease and desist the practice of opening inmates' legal mail outside of their presence.

II. *Qualified Immunity*

■ Even if a plaintiff can establish a constitutional violation, under the doctrine of qualified immunity government officials will not be liable if "[t]heir conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). If the law is not established clearly when an official acts, he is entitled to qualified immunity because he "could not reasonably be expected to anticipate subsequent legal developments." *Harlow,* 457 U.S. at 817–19, 102 S.Ct. 2727. The doctrine of qualified immunity only applies to claims for monetary damages. As such, Defendants' qualified immunity defense is inapplicable to Plaintiffs' request for injunctive relief.

Plaintiffs also seek monetary damages for the violations of their First Amendment rights. While it is true that Third Circuit case law has long established inmates' rights to be present when their legal mail is open, the Supreme Court has held that the "clearly established" inquiry "must be under taken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d

272 (2001). The reasonableness of Defendants' actions must be determined from an "on-scene perspective," and a court should find that state officials are entitled to qualified immunity "if the law did not put him on notice that his conduct would be clearly unlawful." *Id.* at 204–05, 121 S.Ct. 2151. The Legal Mail Policy was enacted at a very uncertain time in our history, and was enacted with the legitimate goal of protecting prison inmates and staff. Although this Court finds that the Legal Mail Policy is an overreaching response to the threat of anthrax contamination, it does not find that the law was so clearly established that it would be obvious to a reasonable official that the policy violated Plaintiffs' First Amendment rights. Because a reasonable official could believe that the Legal Mail Policy was constitutionally permissible under *Turner,* Defendants are entitled to qualified immunity from monetary damages in this case.

Plaintiffs' motion for judgment on the pleadings on Count I of the Amended Complaint is granted to the extent it seeks injunctive relief, but denied to the extent it seeks monetary damages against Defendants in their individual capacities. Defendants' motion is granted to the extent Count I seeks monetary damages and denied to the extent it seeks injunctive relief.

CONCLUSION

It is on this 26th day of October, 2004,

ORDERED that Plaintiffs' motion for judgment on the pleadings is GRANTED in part and DENIED in part; Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part.

**ORDER**

It is on this 26th day of October, 2004:

ORDERED that Plaintiffs' motion for judgment on the pleadings is GRANTED in part and DENIED in part; Defendants'

motion for judgment on the pleadings is GRANTED in part and DENIED in part.